GREENE, Appellant,

v.

BARRETT et al., Appellees.

[Cite as *Greene v. Barrett* (1995), 102 Ohio App.3d 525.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 67156.

Decided April 17, 1995.

526

*McCarthy, Lebit, Crystal & Haiman, Irwin S. Haiman* and *Jeffrey A. Huth,* for appellant.

*Joyce E. Barrett, pro se; Gallagher, Sharp, Fulton & Norman and George W. Stuhldeher,* for appellees.

---

PATRICIA ANN BLACKMON, Judge.

Rosalie Greene, plaintiff-appellant, timely appeals the decision of the trial court granting summary judgment in favor of Joyce Barrett and Rubin Guttman, defendants-appellees, in a professional negligence action. The action involved a separation agreement drafted by Barrett and Guttman's representation of Greene in a subsequent divorce action. In their motions for summary judgment, Barrett and Guttman argued that they were not negligent in their representation of Greene and that Greene's action was barred by the statute of limitations. Greene assigns the following four errors for our review:

"I. The trial court's grant of summary judgment was error due to the existence of a genuine issue of material fact as to whether or not the action was barred by the statute of limitations.

"II. The trial court erred in determining that the amended complaint, renaming Guttman as a party pursuant to court order, did not relate back to the filing date of the original complaint.

"III. The court erred in determining that no issue of material fact existed as to whether or not the actions or inactions of defendants Barrett and Guttman proximately caused the injury or damage to plaintiff Rosalie Greene.

"IV. A question of fact existed as to whether defendant Guttman's acts (or non-acts) proximately caused Mrs. Greene's injuries."

After reviewing the record and the arguments of the parties, we find no error in the trial court's decision. Therefore, we affirm the decision of the trial court. The apposite facts follow.

In 1982, Rosalie Greene, plaintiff-appellant, hired Joyce Barrett, defendant-appellee, to prepare a separation agreement to be signed by Rosalie Greene and her husband, Walter Greene. The agreement provided, in pertinent part:

"Husband will forthwith designate and thereafter maintain Wife as irrevocable beneficiary on his Civil Service Retirement Plan, to which, as of November 28, 1981, he had contributed $3046.35."

On August 4, 1982, pursuant to the separation agreement, Walter Greene executed a Form 8808 designating Rosalie Greene as the irrevocable beneficiary of his benefits. In 1984, Rosalie Greene decided to divorce Walter Greene. Rosalie Greene hired Rubin Guttman to represent her in the divorce action. The separation agreement was incorporated into the final divorce decree in October 1984.

Walter Greene died in March 1989. Rosalie Greene applied for survivor's benefits from the Office of Personnel Management ("OPM"). On March 26, 1990, Greene received a letter from OPM denying her application for benefits. In the letter, Greene was advised that divorced spouses of deceased civil service employees were not eligible for survivor benefits prior to May 7, 1985. Because Rosalie Greene divorced Walter Greene before May 7, 1985, she was not eligible for survivor benefits.

On January 18, 1991, Greene filed a complaint in malpractice against Joyce Barrett and Rubin Guttman. In the complaint, Greene alleged that Barrett and Guttman failed to inform her that, as a divorced spouse, she would not be eligible for survivor's benefits. On January 29, 1991, Greene voluntarily dismissed her claims against Guttman without prejudice. On February 21, 1991, Barrett filed a motion to dismiss the complaint for failure to state a claim for relief and failure to join a party. She also asked for sanctions under R.C. 2323.51. On June 18, 1991, the trial court denied Barrett's motion to dismiss and for sanctions. However, the court ordered Greene to join Guttman as a necessary party under Civ.R. 19. On July 2, 1991, Greene filed her first amended complaint upon new party defendant Guttman.

On July 10, 1991, Barrett filed her answer to Greene's complaint and included counterclaims against Greene for malicious prosecution, libel, slander, and infliction of emotional distress. Barrett also included a cross-claim against Guttman alleging that Guttman was solely responsible for any losses sustained by Greene. In an August 27, 1991 journal entry, the trial court dismissed all of Barrett's counterclaims against Greene except the claim for infliction of emotional distress. Barrett's motion for sanctions was ordered withheld until the end of the case.

On September 4, 1991, Barrett filed a motion for leave to file instanter her motion for summary judgment. In November 1991, the court granted Barrett

leave to file her motion for summary judgment. On March 30, 1992, the trial court granted summary judgment for Barrett. Greene moved for findings of fact and conclusions of law or for a Civ.R. 54(B) determination. The trial court denied the motion for findings of fact and conclusions of law but issued a journal entry saying there was no cause for delay.

On December 13, 1993, Greene filed a motion for summary judgment on Barrett's counterclaim. On December 27, 1993, Guttman filed a motion for summary judgment on Greene's claim. On February 11, 1994, the trial court entered summary judgment for Greene on Barrett's counterclaim. On March 24, 1994, the trial court granted Guttman's motion for summary judgment. This appeal followed.

The central issue raised by this appeal is whether the trial court properly granted summary judgment in favor of Guttman and Barrett on claims brought against them by Greene. Summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts, and written stipulations of facts show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C). When evaluating a motion for summary judgment, the trial court must construe the evidence most strongly in favor of the nonmovant. *Id.* Consequently, doubts must be resolved in favor of the nonmovant. *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 358–359, 604 N.E.2d 138, 139–140. The nonmovant may not rest on his pleadings, however, but must produce evidence on any issue for which he bears the burden of production at trial. *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 111, 570 N.E.2d 1095, 1099.

The first argument raised by Greene is the trial court erred in finding that her claims against Barrett and Guttman were barred by the applicable statute of limitations. R.C. 2305.11 establishes that actions for legal malpractice must be brought within one year after the cause of action accrues. In *Omni Food & Fashion, Inc. v. Smith* (1988), 38 Ohio St.3d 385, 388, 528 N.E.2d 941, 944, the Supreme Court held a cause of action in legal malpractice accrues when either the client becomes aware or should have become aware of the resulting damage or injury or upon the termination of the attorney-client relationship, whichever comes later. When determining the accrual date of a legal malpractice action, the trial court must explore the facts of the action and determine when the injured party became aware or should have been aware of the seriousness of the alleged legal problem, aware the alleged damage or injury was related to a specific legal transaction previously rendered to him and whether such damage or injury would put a reasonable person on notice of the need for further inquiry as to the cause of the damage or injury. *Id.*

■ Greene maintains a genuine issue of fact remains as to when the cause of action accrued. In her motion for summary judgment, Barrett argued that the cognizable event which should have put Greene on notice of her injury occurred in October 1984 when Rosalie and Walter Greene were divorced. Guttman claimed that the cause of action accrued either in April 1989 when OPM first refused to pay Greene survivor benefits or December 1989 when Greene was notified that her claim for survivor benefits had been rejected. Greene claimed that her cause of action did not accrue until March 26, 1990, when she was informed both of the denial of benefits and of the reason for the denial. Greene claims that until she found out she was denied benefits because she was a former spouse of Walter Greene, she did not know the denial was connected to the actions of Barrett and Guttman.

The determination of when a cause of action for legal malpractice accrues is a question of law which we may decide without deference to the findings of the trial court. We find the cause of action accrued on March 26, 1990 when Greene was notified by OPM that, as a former spouse of Walter Greene, she could not receive survivor benefits. While the prior communications from OPM made Greene aware that there was potentially a problem with her benefits claim, it was not until she received the March 26, 1990 letter that Greene became aware that the problem was related to legal services rendered by Barrett and Guttman.

■ Because the cause of action accrued on March 26, 1990, Greene had until March 26, 1991 to commence her malpractice action against Barrett and Guttman. We find the action was timely filed against Barrett because she was named in Greene's initial complaint filed on January 18, 1991 and Barrett remained a defendant throughout the action. Guttman was also named as a defendant in the complaint filed January 18, 1991. However, on January 29, 1991, Greene voluntarily dismissed without prejudice her claims against Guttman. On March 26, 1991, the day the statute of limitations ran out, there was no claim pending against Guttman. On July 2, 1991, Greene filed her first amended complaint upon new party defendant Rubin Guttman. She argues, under Civ.R. 15(C), that the amended complaint related back to the date of the original complaint and, consequently, her action was timely filed against Rubin Guttman. We disagree.

Under Civ.R. 15(C), an amended complaint relates back to the date of the original pleading under the following circumstances: (1) if the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth in the original pleading; (2) if, before the statute of limitations has run against him, the party to be brought in by amendment has received sufficient notice of the claim such that his ability to maintain his defense on the merits has not been prejudiced; and (3) if the party to be brought in by

amendment knew, or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him.

When construed most favorably to Greene, the evidence supports a finding that Greene's claim against Guttman arose out of the same conduct, transaction, or occurrence as her claim against Barrett. The evidence also supports a finding that the filing and service of the original complaint provided Guttman with notice that Greene believed he had committed legal malpractice and allowed him sufficient opportunity to prepare a defense to the claim. Guttman's opportunity to maintain a defense was not prejudiced by the subsequent dismissal of the claims against him. Because the dismissal was without prejudice, Guttman was on notice that Greene could later reinstate the claims. However, Greene has not gone forward with sufficient evidence to show that the failure to maintain her claims against Guttman was due to a mistake about the identity of the proper party. Greene knew Guttman was the party who handled Greene's divorce and named Guttman in her initial complaint. Although Greene gives no reason for dismissing Guttman, it is undisputed that the dismissal was voluntary. There is no evidence of a mistake with regard to the identity of the parties involved in this case.

" * * * Ohio Civ.R. 15(C) may be employed to substitute a party named in the amended pleading for a party misidentified in the original pleading to permit the amended pleading to relate back to the date of the original pleading provided the requirements of the rule are otherwise satisfied. However, the rule may not be employed to assert a claim against an additional party while retaining a party against whom a claim was asserted in the original pleading." *Kraly v. Vannewkirk* (1994), 69 Ohio St.3d 627, 632, 635 N.E.2d 323, 326, 327.

Because we find the conditions for applying Civ.R. 15(C) were not met in this case, we find that the July 2, 1991 amended complaint did not relate back to the filing date of the original complaint. Consequently, the trial court did not err in finding that Greene's claim against Guttman was barred by the one-year statute of limitations for legal malpractice.

Having found Greene's claim against Guttman time-barred, we need not address the issue of whether Guttman's alleged negligence proximately caused Greene's injuries. However, the issue of proximate cause is relevant to determining whether summary judgment was properly granted on Greene's claim against Barrett.

In order to establish her claim of legal malpractice against Barrett, Greene had to show that there was an attorney-client relationship between Barrett and Greene, that Barrett breached the duty to exercise the requisite knowledge, skill, and ability ordinarily used by members of her profession, and

that Greene's losses were proximately caused by Barrett's breach of duty. See *Treft v. Leatherman* (1991), 74 Ohio App.3d 655, 658, 600 N.E.2d 278, 280. It is undisputed that an attorney-client relationship existed between Barrett and Greene. Greene argues Barrett breached her duty to exercise the requisite legal skill in her representation. In support of her claim, she presented the affidavit of Irwin Haiman, who opined that Barrett did not meet the requisite level of skill when she failed to advise Greene of the consequences of divorce upon the benefits provision of the separation agreement. However, we find Greene has not gone forward with sufficient evidence to show that Barrett's alleged errors proximately caused her injuries.

All parties agree, in 1984 the law did not provide for the payment of survivor's benefits to former spouses. It was not until 1985 that such benefits became payable. In deciding whether an attorney has committed malpractice, the court must consider the law as it existed at the time of the allegedly negligent act. *Howard v. Sweeney* (1985), 27 Ohio App.3d 41, 43, 27 OBR 43, 45–46, 499 N.E.2d 383, 386. At the time the settlement agreement was drafted, the law did not provide for the payment of survivor's benefits to former spouses. Since the payment of such benefits was not authorized under the law as it stood at the time the agreement was drafted, Greene has failed to demonstrate any causal connection between the drafting of the agreement and her ineligibility for survivor's benefits.

In response to Barrett's summary judgment motion, Greene argues the negligent act by Barrett was not the failure to obtain survivor's benefits but the failure to "provide for the future support of the Wife" by making alternate provisions for Greene's support. Under the settlement agreement, Greene received various stock, $1,334 per month in spousal support, one third of Walter Greene's income from his private law practice, alimony, maintenance of hospitalization and major medical insurance coverage, and was named irrevocable beneficiary on Walter Greene's Civil Service Retirement Plan.

In her affidavit attached to her motion for summary judgment, Barrett stated that, at the time the separation agreement was prepared, Greene never told her that she was contemplating a divorce from Walter Greene. On the contrary, Greene and Walter Greene told Barrett that they did not intend to legally dissolve the marriage, but merely to live separate and apart pursuant to the terms of the separation agreement. Greene did not contend that she was contemplating divorce at the time she retained Barrett, nor did she claim to have told Barrett of such an intention. Without such information, Greene has not established that Barrett had a duty to advise her that under federal law, divorced spouses of deceased employees were not entitled to survivor benefits. If the parties had continued to live apart without obtaining a divorce, Greene would

have been entitled to receive the benefits upon Walter Greene's death and her future support would have been adequately provided for.

Additionally, we find Greene has not produced evidence to show that Barrett's actions proximately caused Greene's loss. Although Greene claims her action does not relate specifically to the loss of survivor benefits, in her complaint, Greene specifically referred to the survivor benefits. Her calculated damages were based upon an expected $984 per month for twenty-one years for a total of $247,968. Despite her claims to the contrary, the language used in her complaint indicates that her claimed injury is the loss of survivor benefits.

The separation agreement drafted by Barrett did not divest Greene of her right to survivor benefits. On the contrary, when the attorney-client relationship terminated between Greene and Barrett, Greene remained entitled to the survivor benefits. It was not until she divorced Walter Greene that she became ineligible for the benefits. The divorce action was not instituted until 1984, approximately two years after the agreement was signed. There is no evidence in the record that Greene ever sought advice from Barrett about whether to obtain a divorce from Walter Greene. Barrett was not retained to represent Greene in her divorce. Under the circumstances, we find no causal connection between Barrett's representation with respect to the separation agreement and Greene's subsequent loss of survivor benefits.

Because Greene failed to establish that the essential elements of duty, breach of duty, and proximate cause, the trial court was correct in granting Barrett's motion for summary judgment on Greene's malpractice claim.

The judgment is affirmed.

*Judgment affirmed.*

HARPER, J., concurs.

KARPINSKI, J., concurs in judgment only.