**WHITAKER, Appellant,**

v.

**KEAR et al., Appellees.**

[Cite as *Whitaker v. Kear* (1997), 123 Ohio App.3d 413.]

Court of Appeals of Ohio,
Fourth District, Ross County.

No. 96 CA 2261.

Decided Oct. 8, 1997.

**414**

*Bernard D. Mazer* and *Kerry M. Donahue*, for appellant.

*David A. Herd*, for appellee Joseph Kear.

*Susan Blasik–Miller*, for appellee Thomas M. Spetnagel.

*James L. Mann*, for appellee William H. Allyn, Jr.

KLINE, Judge.

Michael D. Whitaker appeals from judgments in favor of his former attorneys, Joseph G. Kear, Thomas M. Spetnagel, and William H. Allyn, on his legal

malpractice claims. Whitaker asserts that the Ross County Court of Common Pleas erred when it determined that the statute of limitations on his legal malpractice claim against Kear expired before Whitaker filed a complaint. We disagree. Whitaker also asserts that the trial court erred by granting directed verdicts in favor of Allyn and Spetnagel, arguing that reasonable minds could have concluded that Allyn and Spetnagel committed legal malpractice. We disagree. Additionally, Whitaker challenges the trial court's determination *in limine* that he could not present certain damage claims at trial. We find this question moot. Finally, Whitaker claims that the trial court granted a directed verdict without sufficient evidence against him on Spetnagel's counterclaim for unpaid legal services. We disagree. Accordingly, we affirm the judgment of the trial court.

## I

Howard and Patricia Whitaker, who died within a few weeks of each other in 1984, each divided their estates evenly between their children, Michael Whitaker ("Whitaker") and Catherine Reed. The probate court appointed Whitaker as executor of both estates, and Whitaker retained Kear to advise him in the administration of the estates. In the course of this representation, Kear sent Whitaker a letter in which he advised Whitaker regarding closing the estates. Whitaker misunderstood this letter, believing that Kear had advised him to keep the estates open for a lengthy period of time. However, on several occasions Kear and Whitaker orally discussed the need to close the estates quickly.

Between November 1984 and April 1989, Kear filed three partial accounts with the probate court on Whitaker's behalf. The type and adequacy of notice Kear provided to Reed with regard to these accounts are in dispute. Prior to at least one of the accounts, Kear advised Whitaker that certain disbursements Whitaker made to himself were inappropriate. In April 1989, Kear requested leave to withdraw as counsel for Whitaker, reporting frustration with Whitaker's lack of cooperation and diligence in fulfilling his duties as executor. The probate court granted Kear permission to withdraw, and Kear had no further involvement in the estates.

Whitaker continued to act as executor for his parents' estates, but did not retain new counsel until August or September 1990 when Allyn entered an appearance on his behalf. By that time, Whitaker had not filed an account in approximately two and a half years, and the Ross County Probate Court had issued a citation ordering him to file an account or show cause why he should not be held in contempt. Allyn assisted Whitaker in filing three more partial accounts.

In May 1992, Reed filed an action in Ross County Common Pleas Court to partition property she and Whitaker jointly inherited from an aunt. Reed also filed an application in the probate court to remove Whitaker as executor of their parents' estates, alleging that he had engaged in self-dealing and mismanagement. One month later, Reed withdrew that application on the condition that Whitaker file a final account and close the estates. However, in August 1993 the estates remained open. Reed filed motions to vacate entries settling the accounts and to remove and surcharge Whitaker. Reed also deposed Whitaker in September 1993. At his deposition, Whitaker expressed his belief that Kear had committed legal malpractice.

On September 30, 1993, the probate court held a hearing on Reed's motions to remove and surcharge Whitaker. As a result of that hearing, Whitaker agreed to resign as executor. The court then scheduled a second hearing to determine the amount of the surcharges the court would impose against Whitaker.

Allyn represented Whitaker in the partition action as well as in probate court through September 1993. Allyn became concerned with a potential conflict of interest between representation of Whitaker in his representative capacity and in his individual capacity. He suggested that Whitaker retain Spetnagel to represent him in the partition action.

As Allyn advised, Whitaker retained Spetnagel in September 1993. In October 1993, Whitaker faxed Spetnagel a letter stating that he wished to discuss possible claims against Kear and Allyn for malpractice. In their subsequent conversation about Kear, Spetnagel informed Whitaker that he would not pursue a lawsuit against a brother attorney in Chillicothe, and advised Whitaker that he should consult an attorney in Columbus if he wished to pursue a legal malpractice suit against a Ross County attorney. Additionally, Spetnagel advised Whitaker of the one-year statute of limitations for malpractice and of the complications and difficulties in determining when the statute began to run.

Allyn continued to represent Whitaker on the surcharges. The probate court held hearings on the surcharges on March 31 and April 14, 1994. Shortly after the final hearing on the surcharges, Allyn withdrew as Whitaker's attorney in the probate matters. On May 23, 1994, the probate court issued its decisions regarding the amount of surcharges, totaling over $165,000. Whitaker asked Spetnagel to represent him in the appeal of the surcharge decisions. Around the same time, Whitaker began consulting with attorneys at Carlile, Patchen & Murphy, a Columbus law firm.

Spetnagel filed an appeal from the decision in Patricia Whitaker's estate, in which the probate court surcharged Whitaker $139,998. Shortly thereafter, Spetnagel withdrew as Whitaker's counsel in both the partition and the probate

case. On August 18, 1994, Carlile, Patchen & Murphy entered an appearance as Whitaker's counsel in the Ross County Probate Court.

On March 31, 1995, Whitaker filed a complaint against Kear in the Ross County Court of Common Pleas. On August 3 and 11, respectively, he filed complaints against Spetnagel and Allyn. On Whitaker's motion, the trial court consolidated the three cases. In January 1996, the court granted Kear's motion for summary judgment, finding that Whitaker failed to file his complaint within one year of his discovery of Kear's malpractice.

The court granted Spetnagel's motion for partial summary judgment on Whitaker's claims regarding the appeals of the surcharge decisions. Whitaker does not challenge this ruling.

The court also granted Spetnagel and Allyn's *in limine* motion to exclude evidence at trial regarding damages claimed by Whitaker which were not recoverable in the malpractice action as a matter of law. Specifically, the trial court ruled that Whitaker could not present his claims for (1) attorney fees and expenses incurred by Reed, (2) attorney fees incurred in the prosecution of the partition action and the malpractice action, (3) lost income of Whitaker, and (4) executor fees. Whitaker appeals this ruling.

At trial, Whitaker testified that Allyn never advised him as to whether he had a claim against Kear. He also testified that Allyn never informed him that Allyn would not pursue a claim against Kear for personal reasons. Whitaker admitted on cross-examination that Spetnagel advised him to look for an attorney outside Ross County if he wished to sue Kear. Whitaker also admitted that Spetnagel told him that the statute of limitations on a malpractice claim allows only one year to file a claim, and that determining when the statutory period commences requires evaluating complex and "murky" legal issues.

Richard Metcalfe testified at trial as an expert on probate law. Metcalfe opined that Kear's representation of Whitaker fell below the professional standard of care. Metcalfe also testified that Allyn and Spetnagel's failure to recognize Kear's malpractice and take steps to rectify it by bringing a malpractice suit against Kear amounted to malpractice on the part of Allyn and Spetnagel. Finally, Metcalfe testified that Allyn and Spetnagel should have raised the R.C. 2109.35(C) statute of limitations to defend Whitaker in Reed's action for surcharges. On cross-examination, however, Metcalfe admitted that he did not know that R.C. 2109.35(C) applies only to final accounts and that Reed sued regarding a partial account.

At the close of Whitaker's case, Allyn and Spetnagel each moved for directed verdicts in their favor on the malpractice claims. The court granted both directed verdicts.

Spetnagel then presented evidence on his counterclaim for the value of his thirty-nine hours of service to Whitaker. In addition to a billing statement and Spetnagel's own testimony, Allyn testified on Spetnagel's behalf as an expert on reasonable attorney billing rates in the community. Allyn stated that he charged $100 per hour for his services, but that Spetnagel's rate of $125 was very reasonable as well. The court granted judgment in favor of Spetnagel at the rate of $100 per hour, for thirty-nine hours, plus the amounts advanced to Whitaker for court expenses.

Whitaker now appeals, asserting the following assignments of error:

"I. The trial court erred in granting Appellee Kear's Motion for Summary Judgment.

"II. The trial court erred in granting a directed verdict in favor of Appellee Allyn as to the legal malpractice claims of the Appellant.

"III. The trial court erred in granting a directed verdict in favor of Appellee Spetnagel as to the legal malpractice claims of the Appellant.

"IV. The trial court erred in rendering a judgment in favor of Appellee Spetnagel in the sum of four-thousand six hundred three dollars.

"V. The trial court erred in granting the motion of Appellee Allyn and Appellee Spetnagel *in limine* as to certain of the Appellant's damage claims."

## II

In his first assignment of error, Whitaker challenges the trial court's determination that he filed his malpractice claim against Kear after the statute of limitations expired. Whitaker does not dispute the facts upon which the trial court based its decision. Rather, he claims that the court erred by finding as a matter of law that his cause of action against Kear accrued when Reed filed for surcharges in September. Instead, Whitaker argues that the statute of limitations began to run in April 1994, when he first met with Columbus counsel and received an "honest" opinion as to Kear's malpractice. Alternatively, Whitaker argues that if the statute began to run in September 1993, the statute must be tolled until he met with his Columbus counsel. Whitaker also argues that the cause accrued in May 1994, when the Ross County Probate Court issued judgment entries setting the amount of the surcharges. Finally, Whitaker asserts that the cause of action did not ripen until the Ross County Court of Appeals affirmed the assessment of surcharges against him, at which time he conclusively knew the extent of his injuries.

The statute of limitations applicable to a legal malpractice action is one year. R.C. 2305.11(A). In addressing when the statutory period begins to run, the Supreme Court of Ohio held:

"Under R.C. 2305.11(A), an action for legal malpractice accrues and the statute of limitations begins to run when there is a cognizable event whereby the client discovers or should have discovered that his injury was related to his attorney's act or non-act and the client is put on notice of a need to pursue his possible remedies against the attorney or when the attorney-client relationship for that particular transaction or undertaking terminates, whichever occurs later. (*Omni–Food & Fashion, Inc. v. Smith* [1988], 38 Ohio St.3d 385, 528 N.E.2d 941, applied.)" *Zimmie v. Calfee, Halter & Griswold* (1989), 43 Ohio St.3d 54, 538 N.E.2d 398, syllabus.

■ The determination of when a cause of action for malpractice accrues is question of law to be reviewed *de novo* by this court. *Greene v. Barrett* (1995), 102 Ohio App.3d 525, 657 N.E.2d 553.

The parties do not dispute that the attorney-client relationship between Whitaker and Kear ended in April 1989 and that Whitaker did not file a complaint against Kear until March 1995. Therefore, pursuant to the second prong of *Zimmie*, the relevant inquiry asks when plaintiff's legal malpractice action accrued under the discovery rule.

■ The discovery rule requires a "cognizable event" notifying the client of an injury to trigger the statute of limitations. The term "cognizable event" has been defined as an event which suffices to alert a reasonable person that his attorney has committed an improper act in the course of legal representation. *Spencer v. McGill* (1993), 87 Ohio App.3d 267, 278, 622 N.E.2d 7, 14–15; *McDade v. Spencer* (1991), 75 Ohio App.3d 639, 641, 600 N.E.2d 371, 372–373. When a third party sues a client based on actions the client took on the advice of an attorney, the cognizable event occurs upon notice of the lawsuit, not upon entry of a judgment in favor of the third party. See *McDade, supra,* at 641, 600 N.E.2d at 372–373. In *McDade,* the appellant argued that the trial court's ruling that he was in contempt constituted the cognizable event which placed him on notice of his attorney's possible malpractice. The court held, however, that the appellant should have been aware of an injury caused by his attorney when he learned of the contempt motions filed against him. *McDade* at 641–642, 600 N.E.2d at 372–374. See, also, *Schultz Trust v. Strachan* (June 2, 1994), Cuyahoga App. No. 66550, unreported, 1994 WL 245622 (cognizable event was filing of motion against client, not entry of adverse judgment). Thus, a client need not conclusively know of the extent of his or her injury in order for the statutory period to commence.

■ Applying the discovery rule to the case before us, and construing the facts in the light most favorable to Whitaker, we find that the trial court correctly determined that Whitaker's knowledge of an action to surcharge him over $165,000 was the cognizable event which triggered the statute of limitations. As in *McDade,* the trial court reasoned that the cognizable event occurred when Reed filed suit against him in connection with actions Whitaker took on Kear's advice, not when the probate court entered judgment against him. As the trial court artfully stated in its summary judgment opinion in favor of Kear, a reasonable person would find the discovery of such costly charges to be "of major discomfort to the beholder—no less so than seeing scissors contained in an x-ray of one's stomach some time after surgery."

Furthermore, a review of Whitaker's September 1993 deposition reveals that at that time he felt Kear's legal practices were "questionable." Therefore, Whitaker possessed actual notice of the need to investigate possible remedies against Kear in September 1993.

Whitaker asks, should this court determine that his cause of action accrued in September 1994, that we find that the statute of limitations was tolled until April 1994. Whitaker contends tolling is appropriate in the interest of justice because Allyn and Spetnagel did not inform him of his rights against Kear. Whitaker cites *Omni–Food & Fashion Inc. v. Smith* (1988), 38 Ohio St.3d 385, 387, 528 N.E.2d 941, 943–944, for the proposition that "[s]trict adherence to the discovery rule, * * * potentially encourages an unscrupulous attorney to conceal his or her malpractice until that time when the statute of limitations has run its course."

Contrary to Whitaker's representation, *Omni–Food* held that we must flexibly apply either the discovery or the termination rule, depending on the facts of the case, not that we must bend or disregard the discovery rule in favor of tolling the statute. *Id.* at 387, 528 N.E.2d at 943–944. Moreover, the fairness concern in *Omni–Food,* wherein a continued attorney-client relationship following a cognizable event served to time-bar the client's claim, is not present in this case. Whitaker was able to pursue claims against Allyn and Spetnagel regarding their advice on Kear, even though more than one year had elapsed since the cause of action against Kear accrued.

We find as a matter of law that the cognizable event which should have alerted Whitaker that Kear might have committed malpractice occurred in September 1993. Additionally, we find that neither legal authority nor equity justifies tolling the statute of limitations. Therefore, we find that the trial court properly granted summary judgment in favor of Kear on the basis that the statute of limitations expired before Whitaker filed his malpractice complaint.

Accordingly, we overrule Whitaker's first assignment of error.

III

In his second assignment of error, Whitaker asserts that the trial court erred by granting a directed verdict in favor of Allyn. In his brief, Whitaker sets forth an elaborate argument to establish that he filed his suit against Allyn within the statute of limitations. We find this argument irrelevant, because the trial court did not grant the directed verdict on Allyn's behalf on the basis of a lapsed statute of limitations. Rather, as Allyn points out in his brief, the trial court based its ruling on the undisputed fact that Whitaker obtained advice on his rights against Kear from Spetnagel and from Carlile, Patchen & Murphy before the deadline for filing suit against Kear passed. The court, therefore, came to the conclusion that reasonable minds could not conclude that Allyn caused Whitaker's injury.

A trial court may not grant a directed verdict unless the evidence, when construed in the light most favorable to the nonmovant, can lead reasonable minds to only one conclusion, and that conclusion is adverse to the nonmovant. Civ.R. 50(A)(4). This rule requires the trial court to give the nonmoving party the benefit of all reasonable inferences that may be drawn from the evidence. *Broz v. Winland* (1994), 68 Ohio St.3d 521, 526, 629 N.E.2d 395, 398–399. Although a motion for directed verdict requires a trial court to review and consider the evidence, the motion does not present a question of fact or raise factual issues. *Ruta v. Breckenridge–Remy Co.* (1982), 69 Ohio St.2d 66, 23 O.O.3d 115, 430 N.E.2d 935, paragraph one of the syllabus. A motion for a directed verdict tests the legal sufficiency of the evidence rather than its weight or the credibility of the witnesses. *Ruta* at 68–69, 23 O.O.3d at 114–115, 430 N.E.2d at 937–938. A motion for a directed verdict therefore presents a question of law, and an appellate court conducts a *de novo* review of the lower court's judgment. *Howell v. Dayton Power & Light Co.* (1995), 102 Ohio App.3d 6, 13, 656 N.E.2d 957, 961.

In order to avoid a directed verdict on a legal malpractice claim, the plaintiff must present evidence that (1) the attorney owed a duty or obligation to the plaintiff, (2) the attorney breached that duty or obligation and failed to conform to the standard required by law, and (3) a causal connection exists between the conduct complained of and the resulting damage or loss. *Vahila v. Hall* (1997), 77 Ohio St.3d 421, 674 N.E.2d 1164, syllabus. The trial court found that Whitaker failed to present evidence upon which reasonable minds could conclude that the first and third of these elements were met.

Whitaker asserts first that, as a matter of law, Allyn owed Whitaker a duty to pursue any possible malpractice claim against Kear because Allyn represented Whitaker in probate court. However, Whitaker does not dispute

that Allyn's duty ended when Allyn withdrew from their attorney-client relationship in April 1994, five months prior to the expiration of Whitaker's claim against Kear.

Second, Whitaker contends that even if he knew that Allyn would not sue Kear for personal reasons, the holding in *Omni–Food, supra,* obliged Allyn either to withdraw as his probate counsel or pursue a claim against Kear. Allyn was required to do so, Whitaker asserts, because by continuing to represent him in probate court, Allyn induced Whitaker to forgo his malpractice claim until the statute of limitations expired.

As we discussed in section II above, *Omni–Food* applies when an attorney remains in an attorney-client relationship through the expiration of the discovery rule statutory period following the attorney's own malpractice. The self-interest concerns present in *Omni–Food* are not present here, where Whitaker accuses Allyn of continuing representation during the statutory period following Whitaker's discovery of Kear's, not Allyn's, malpractice.

Finally, Whitaker contends that, but for Allyn's failure to sue Kear, he would have timely pursued the claim and collected the value of the surcharges from Kear. However, Whitaker's own testimony establishes that he spoke with both Spetnagel and Carlile, Patchen & Murphy prior to the expiration of the statute of limitations for his claim against Kear. Whitaker attempts to turn this into a disputed fact by pointing to conflicting testimony regarding whether Spetnagel advised him to seek Columbus counsel in October 1993 or April 1994.

We find that when Whitaker received the advice to seek other counsel is immaterial, because in either case the conversation took place long before the September 1994 expiration of the statute of limitations. Additionally, we note that Whitaker claims he first received an "honest" opinion on his claim against Kear in April 1994. We therefore find that Whitaker had ample opportunity to file a claim against Kear before September 1994, and cannot cast blame on Allyn for his failure to take action.

Based on these undisputed facts, we find that Allyn's duty to Whitaker ceased before the inaction causing Whitaker's injury occurred. Furthermore, we find that no reasonable person could conclude that Allyn caused Whitaker to delay in filing a malpractice against Kear until March 1995. Accordingly, we overrule Whitaker's second assignment of error.

## IV

In Whitaker's third assignment of error, he asserts that the trial court erred by entering a directed verdict in favor of Spetnagel. Whitaker admits that Spetnagel told Whitaker that he would not sue Kear, advised Whitaker to look for

a Columbus attorney if he wished to pursue the matter, and indicated that the statute of limitations was a complicated matter.

Applying the three-prong test for legal malpractice outlined in *Vahila, supra,* we find that the undisputed facts can only lead reasonable minds to conclude that Spetnagel did not owe Whitaker a duty to sue Kear. Spetnagel informed Whitaker that he would not sue Kear and advised Whitaker to seek Columbus counsel if he wished to pursue the matter further. Spetnagel's duty to sue Kear, if ever existent, terminated at that time.

Accordingly, we overrule Whitaker's third assignment of error.

## V

We next address Whitaker's fifth assignment of error, in which he argues that the trial court erred by granting Allyn and Spetnagel's motion *in limine* to exclude evidence of certain damages claimed by Whitaker. Having already determined that the trial court correctly granted Allyn and Spetnagel's motions for directed verdict on Whitaker's malpractice claims, we find this question moot. Accordingly, we decline to address Whitaker's fifth assignment of error. App.R. 12(A)(1)(c).

## VI

Finally, in Whitaker's fourth assignment of error, he asserts that the trial court erred by awarding Spetnagel attorney fees in the absence of any testimony as to the reasonableness of those fees. Spetnagel argues that he did present evidence, by way of expert testimony, to prove that his fees were reasonable.

The attorney seeking to prove the reasonableness of his fees carries the burden of proof. *Climaco, Seminatore, Delligatti & Hollenbaugh v. Carter* (1995), 100 Ohio App.3d 313, 323–324, 653 N.E.2d 1245, 1251–1252. The court must base a finding of reasonableness on some evidence. *Id.* Merely submitting a copy of billing records will not suffice. *Id.* Rather, the court should consider evidence such as the time and labor necessary for the service requested, the customary fees in the locality for similar services, the results obtained, and the experience, reputation and ability of the attorney. *Id.,* citing *Pyle v. Pyle* (1983), 11 Ohio App.3d 31, 11 OBR 63, 463 N.E.2d 98.

Here, Spetnagel presented a billing statement and testified as to his experience and the time he spent on Whitaker's case. Additionally, Spetnagel offered the testimony of Allyn as an expert in the community. Allyn testified that Spetnagel carries an excellent reputation in the Ross County legal community. Additionally, Allyn stated that Spetnagel spent a reasonable amount of time

on Whitaker's case. Finally, Allyn testified that a billing rate between $100 and $125 per hour is typical and very reasonable for similar legal services within the local legal community.

We find that Spetnagel presented sufficient evidence to establish the reasonableness of his attorney fees. Accordingly, we overrule Whitaker's fourth assignment of error.

*Judgment affirmed.*

STEPHENSON, P.J., and PETER B. ABELE, J., concur.