[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
Jennifer C. Thomas, n.k.a. Jennifer C. Giroux ("Giroux"), appeals from a judgment of the Montgomery County Court of Common Pleas, which found in favor of James R. Kirkland and James R. Kirkland Associates (collectively, "Kirkland") on three claims of legal malpractice.
The facts and procedural history pertinent to this appeal are as follows.
After nine years of marriage and the birth of four children, Dr. Joseph D. Thomas filed a complaint for legal separation against Giroux. In the fall of 1992, Giroux hired Kirkland to represent her in obtaining a divorce from Dr. Thomas. On December 11, 1992, Giroux filed an "Amended Counterclaim" for divorce with a request for the following restraining order:
 [Giroux] states that [Dr. Thomas] is the owner of a retirement plan/pension plan, through his employment, at Wright-Patterson Credit Union and Holy Cross Savings, in Notre Dame, Indiana, and that [Dr. Thomas] be restrained from removing, transferring, selling, mortgaging and encumbering said Savings Accounts, IRA Accounts, Retirement accounts, Pension accounts and any other savings or financial account of any type, excepting any checking accounts.
Attached to the amended counterclaim was Giroux's affidavit of verity, sworn to before Kirkland, and a one-line order signed by the Greene County domestic relations court stating, "Let restraining orders issue herein as prayed for." [The accounts subject to the restraining order will hereinafter be referred to as the "Wright-Patterson and Holy Cross accounts."] Giroux filed motions for early distribution of marital assets in December 1992 and March 1993, and the trial court denied both motions. The magistrate to whom the divorce case was referred conducted hearings on March 2 and May 6, 1993 and issued a report and recommendation on June 9, 1993. While objections to the magistrate's report and recommendation were pending, on September 8, 1993, the trial court ordered Dr. Thomas to distribute $12,000 to Giroux and $12,000 to himself from the Wright-Patterson and Holy Cross accounts. Dr. Thomas did not comply with the order, and Giroux filed a motion for contempt on September 17, 1993. On November 2, 1993, the trial court conducted a contempt hearing, and Dr. Thomas testified that he did not have sufficient funds in the Wright-Patterson and Holy Cross accounts to make the distributions. Notwithstanding evidence that the two accounts contained approximately $10,000 at the time of the contempt hearing, the trial court did not hold Dr. Thomas in contempt, finding that it was impossible for him to comply with the distribution order. In the January 13, 1994 divorce decree, the trial court found that any funds withdrawn from the Wright-Patterson and Holy Cross accounts on or before May 6, 1993 were deemed to have been expended for marital or family purposes. Dr. Thomas appealed the trial court's divorce decree, and the parties have been litigating various aspects of the divorce in the trial court and in this court for several years.
In February 1994, Giroux terminated the attorney-client relationship with Kirkland, and in April 1995, she filed a legal malpractice action against Kirkland that she voluntarily dismissed and later refiled on November 26, 1996. Of the numerous malpractice claims alleged in the complaint, the following were pursued to trial:
 Failure to produce for the Trial Court necessary records and/or witnesses to support a contempt motion brought by Plaintiff against her former husband after he failed to comply with a Court Order to pay $12,000.00 to Plaintiff.
 Failure to move for an appropriate increase in child support for Plaintiff's four minor children when Plaintiff made such a request of Defendants on January 18, 1994. At that time, the income of Plaintiff's former husband, an Orthopaedic Surgeon, had just risen sharply from approximately $110,000.00 per year to approximately $195,000.00 per year. In 1994, when Plaintiff's subsequent counsel obtained the appropriate increase, Plaintiff's children benefitted from a monthly increase of $800.00. As a result of Defendant's negligence, approximately $6,500.00, was lost by Plaintiff for the period of January of 1994 through August of 1994.
Additionally, Giroux maintained that Kirkland had committed malpractice by neglecting to adequately object to the magistrate's failure to recommend Catholic school tuition as a component of Dr. Thomas's child support obligation and by failing to raise the issue on cross-appeal. Following a five-day jury trial that began on April 6, 1998, the jury found in favor of Kirkland on all three claims of malpractice. Giroux filed a motion for a new trial, which the trial court denied.
Giroux appeals, raising three assignments of error, and on cross-appeal, Kirkland asserts three assignments of error. Kirkland's assignments of error are advanced solely to prevent reversal. R.C. 2505.22. As such, it was unnecessary for him to file a notice of cross-appeal. App.R. 3(C)(2). We will address the parties' claims in the manner that facilitates resolution. Giroux's third assignment of error is as follows.
 III. THE TRIAL COURT ABUSED ITS DISCRETION BY OVERRULING PLAINTIFF'S MOTION FOR A NEW TRIAL.
Giroux contends that the trial court should have granted her Civ.R. 59(A) motion for a new trial on all three claims of legal malpractice. Specifically, she argues that the trial court deprived her of a fair trial by inadvertently failing to record several bench conferences and by prohibiting her expert witness from testifying that Kirkland had committed malpractice by failing to pursue a contempt citation against Dr. Thomas for dissipation of assets in violation of the restraining order while at the same time permitting Kirkland to rely on the restraining order as a defense.
In responding to interrogatories, Giroux identified John K. Daggett, a licensed attorney practicing domestic relations law, as a potential expert witness who would testify "as to the defendants' malpractice," and she stated that the basis for malpractice "is set forth in paragraph 3 of the complaint." Daggett testified at his August 12, 1997 deposition that the trial transcript and the record of the divorce proceedings revealed that "[t]here was no deviation" by Kirkland from the accepted standard of practice but that, if Giroux's sworn allegations against Kirkland were proven to be true, then Kirkland had committed malpractice. In the March 24, 1998 amended joint pretrial statement, Giroux identified Daggett as her sole potential expert witness and stated that he would testify "concerning legal malpractice on the part of the defendant."
On April 1, 1998, Giroux's counsel reviewed the November 1993 contempt hearing transcript and noticed that Kirkland had referred to a restraining order. He contacted Kirkland's counsel to inquire about the restraining order, and on April 2, 1998, Kirkland's counsel faxed him a copy of the amended counterclaim with the attached restraining order. Giroux's counsel showed the restraining order to Daggett that same afternoon. Because Daggett could not attend the trial, Giroux videotaped his testimony on April 3, 1998 for use at trial. Daggett rendered his expert opinion on Kirkland's failure to pursue a contempt citation for dissipating assets in violation of the restraining order:
 * * * Mr. Kirkland's conduct in protecting the assets or in pursuit of the contempt motion fell below the acceptable standard of care.
* * *
 Having the restraining order and having knowledge that money is going out of the accounts, one would appropriately file a contempt action, which Mr. Kirkland did, but the contempt action was based on failure to disburse, could have also or should have also been based on violation of the restraining order for dissipation of the account.
 There is nothing that I can see about that effort in the contempt hearing. It is simply: Do you have money? Did you disburse it? And the answer was: No. And that was what the contempt was based on. It should have been based also on the failure to follow the restraining order, and having knowledge that money was going out of the accounts in March of 1993 through May of 1993, there would have been an obligation or should have been an obligation on counsel of record to obtain additional discovery to determine where the money went.
 That could have been done in [the] form of subpoenas, it could have been done in the form of exhibits, testimony, could have been a lot more done to pursue this money.
Before trial commenced on the morning of April 6, 1998, Kirkland filed a motion in limine and a motion to strike the portions of Daggett's testimony related to "[a]ny alleged deviation for failure to file a motion for contempt for dissipation of funds" based on Dr. Thomas's violation of the restraining order. Kirkland urged that this claim was a new claim that Giroux should have identified in the amended joint pretrial statement and in supplemental answers to interrogatories. During arguments on the motion, Giroux requested a continuance, which the trial court denied. Based on the case of Shumaker v. Oliver B.Cannon Sons, Inc. (1986), 28 Ohio St.3d 367, and Civ.R. 26(E)(1), the trial court sanctioned Giroux for discovery violations by granting Kirkland's motion to exclude Daggett's testimony on the restraining order. The trial court further insisted that "[t]here will be no mention at all about a Restraining Order."
During Kirkland's cross examination testimony, however, Kirkland was permitted to testify that, after the May 6, 1993 hearing, he had not engaged in discovery to track the dissipation of funds held in the Wright-Patterson and Holy Cross accounts because he had relied on "protections," i.e., the restraining order, in preparing for the contempt hearing. Before Daggett's videotaped deposition was played for the jury, the trial court muted any references to the restraining order. Thus, the jury heard Daggett's opinion that Kirkland had committed malpractice by failing to enforce the distribution order but not his opinion that Kirkland had been negligent in failing to pursue a contempt citation for violation of the restraining order. The trial court permitted Kirkland's expert witness, attorney Jeffrey A. Grossman, to testify that the restraining order provided Kirkland with a defense to the malpractice claim:
Q. What's the purpose of [a] Restraining Order?
 A. To keep somebody from squandering funds, giving away assets, * * * taking things out and hiding them and so forth.
 Q. In this action, was there a Restraining Order obtained by Mr. Kirkland?
A. Yes.
 Q. And when you have a Restraining Order in effect, does an attorney deviate from acceptable legal practices or standards in not preventing a — well, let's just use Dr. Thomas in this case — from taking funds out of the account?
A. Well, a lawyer can't stop him from doing that.
 Q. * * * [I]n your opinion, does an attorney have an obligation — or does an attorney breach any standard of care * * * [for] the legal arena, by not following up to determine whether or not there are assets there when you have a Restraining Order in effect?
Do you have an opinion?
* * *
Q. And what is your opinion?
 A. On an ongoing basis, it would be a virtual impossibility for an attorney to do that. Therefore, he certainly — or she certainly, in representing a client, is not deviating from the proper standard of care.
 That person — that attorney has the ability to seek an accounting for those funds later when you find out they've been dissipated. But you can't do anything as you go through the case, * * * you could conceivably be going in and doing discovery every day.
Giroux argues on appeal that the trial court's inconsistent evidentiary rulings — silencing Daggett's testimony on Kirkland's negligent failure to pursue a contempt citation for violation of the restraining order while at the same time permitting Kirkland and Grossman to refer to the restraining order in Kirkland's defense — warrant a new trial on all three malpractice claims because the silenced portions of Daggett's videotaped deposition testimony so severely diminished his credibility that the jury found against her on all claims. Giroux does not otherwise challenge the verdicts on the Catholic school tuition and the child support claims of malpractice. In our opinion, it would be pure speculation to conclude that the silenced portions of Daggett's testimony on the restraining order led the jury to find against Giroux on the claims involving Catholic school tuition and child support, and we thus decline to order a new trial on these two claims of malpractice.
We agree, however, that the trial court's inconsistent rulings on the admissibility of testimony on the restraining order deprived Giroux of a fair trial on her remaining claim. It was not reasonable to prohibit Giroux from using the restraining order "as a sword" while allowing Kirkland to use it "as a shield." Thus, Giroux's claim that Kirkland committed malpractice by failing to pursue a contempt citation will be remanded for a new trial.
The third assignment of error is sustained in part and overruled in part.
 II. THE TRIAL COURT ABUSED ITS DISCRETION BY PERMITTING DEFENDANT'S EXPERT WITNESS TO TESTIFY ABOUT THE SAME SUBJECT MATTER WHICH WAS STRICKEN FROM THE TESTIMONY OF THE PLAINTIFF'S EXPERT WITNESS.
This assignment of error is sustained on the basis of our resolution of Giroux's third assignment of error.
 I. THE TRIAL COURT ABUSED ITS DISCRETION BY DENYING PLAINTIFF'S MOTION FOR A CONTINUANCE AND GRANTING DEFENDANT'S MOTION IN LIMINE TO EXCLUDE THE TESTIMONY OF PLAINTIFF'S EXPERT WITNESS RELATING TO MATTERS DISCOVERED SHORTLY BEFORE TRIAL.
Giroux contends that the trial court erred by refusing to continue the trial to give her an opportunity to respond to Kirkland's motion in limine to exclude Daggett's testimony on the restraining order and by granting the motion in limine. To the extent that the first assignment of error complains about the trial court's ruling on the motion in limine, it is subsumed by the second assignment of error and is thus sustained. To the extent that the first assignment of error challenges the trial court's failure to grant Giroux's motion for a continuance, it is subsumed by the third assignment of error and is thus overruled as moot.
Kirkland asserts the following cross-assignments of error.
 I. THE TRIAL COURT ERRED IN NOT GRANTING THE MOTION OF THE CROSS-APPELLANTS' FOR A DIRECTED VERDICT ON THE CLAIM THAT MR. KIRKLAND DID NOT PROPERLY PREPARE FOR THE NOVEMBER 1993 CONTEMPT HEARING.
Kirkland argues that Giroux did not present any evidence to create a jury question on the issue of whether his failure to pursue a contempt citation against Dr. Thomas was the proximate cause of Giroux's alleged damages.
A motion for a directed verdict shall be granted when the trial court, "after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party." Civ.R. 50(A)(4). To avoid a directed verdict on a legal malpractice claim, the plaintiff must prove that the attorney owed him a duty, that the attorney breached the duty or failed to conform to the standard imposed by law, and that a causal connection exists between the challenged conduct and the resulting damages. Whitaker v. Kear (1997), 123 Ohio App.3d 413,422, citing Vahila v. Hall (1997), 77 Ohio St.3d 421, syllabus. The plaintiff is not required, in every case, to show that he would have prevailed in the underlying action. Vahila,77 Ohio St.3d at 426.
Giroux testified that, in late 1993, she had sought a division of some of the assets contained in the Wright-Patterson and Holy Cross accounts "so that [she] could at least pay off [her] debts and not feel like month-to-month [she] had to worry about it." She stated that, although her credit debt had begun accumulating before she and Dr. Thomas had separated, she could have repaid the debt had the trial court's $12,000 distribution order been enforced. Giroux also explained the difficulty that she and her new husband had faced in obtaining a home loan and the high rate of interest that was applied because of her poor credit history. Sally Cooney, an actuary, testified that the present value of the monthly payment differential [$247.67 greater than if Giroux could have qualified for a loan with a lower interest rate] on the thirty-year mortgage was $39,324.77. A loan officer testified that, due to Giroux's poor credit record, she had qualified for a loan with an interest rate two points higher than she otherwise could have obtained, and a credit union employee testified that, from 1993 to 1997, Giroux had accumulated credit debt amounting to less than $9,000.
Although not transcribed, the testimony of the loan officer and the credit union employee were referred to by the parties during argument on Kirkland's motion for a directed verdict without any complaints that the testimony had not been presented to the jury. Because we have little doubt that the testimony was in fact presented to the jury, we have considered the testimony in reviewing whether a directed verdict should have been granted.
Kirkland argued that he was entitled to a directed verdict because it was "pure speculation and conjecture" that his failure to pursue a contempt citation against Dr. Thomas had been the proximate cause of any damages to Giroux. Giroux insisted, however, (1) that based on testimony that she had accumulated credit debt, which she could have repaid upon receiving an early distribution of some of the marital assets controlled by Dr. Thomas, (2) that Kirkland had instructed her not to pay her credit card bills, and (3) that her credit record had complicated her ability to obtain a home loan, the jury could reasonably infer that Kirkland's negligence was the proximate cause of her damages. The trial court agreed with Giroux that the proximate cause determination was a jury question and denied Kirkland's motion for a directed verdict.
Construing the evidence most favorably to Giroux, we are of the opinion that reasonable jurors could have found that Kirkland's failure to pursue a contempt citation against Dr. Thomas was the proximate cause of her damaged credit. Thus, the trial court correctly denied Kirkland's motion for a directed verdict on this claim of malpractice.
Kirkland's first cross-assignment of error is overruled.
 II. THE TRIAL COURT ERRED IN NOT GRANTING THE DEFENDANTS A DIRECTED VERDICT ON THE CROSS APPEAL CATHOLIC SCHOOL TUITION ISSUE.
 III. THE TRIAL COURT ERRED IN NOT DIRECTING A VERDICT ON FUTURE DAMAGES PERTAINING TO NOT CROSS APPEALING THE FAILURE TO AWARD CATHOLIC SCHOOL TUITION.
Kirkland's second and third cross-assignments of error that the trial court should have directed a verdict in his favor on the claims involving Catholic school tuition and child support are rendered moot by our determination that Giroux is not entitled to a new trial on these claims and are thus overruled.
The judgment of the trial court will be affirmed in part, reversed in part, and remanded for a new trial on the sole issue of Kirkland's alleged malpractice pertaining to the contempt hearing.
BROGAN, J. and FAIN, J., concur.
Copies mailed to:
Thomas W. Condit
Leo F. Krebs
Hon. Adele M. Riley