JOURNAL ENTRY AND OPINION
{¶ 1} AIU Insurance Company ("AIU") appeals from an order of the trial court denying its motion to set off the jury's award in favor of Julie Sarka, et al. AIU claims the trial court erred in failing to grant a setoff of the insurance monies already paid by primary insurance coverage, in denying its subsequent motion for a new trial, and in failing to grant its motion for a protective order. We affirm.
 {¶ 2} The record reveals that in July 2000, Robert Sarka was traveling to Toledo on a business trip for his employer, Time Warner Home Video ("Time Warner"). Robert took his wife, Julie, and daughter, Susan, along for the trip, hoping to have some family time at Maumee State Park after finishing various business meetings.
 {¶ 3} After stopping at a rest stop along the turnpike, Julie Sarka drove the family's car while Robert and Susan played a board game in the back seat. The Sarkas were driving westbound in the center lane on the Ohio turnpike when road construction began to slow traffic. The construction reduced the traffic flow from three to two lanes, and a motor vehicle accident one mile ahead of the Sarkas further contributed to the problem.
 {¶ 4} As the Sarkas' car sat stopped on the turnpike, a motor home traveling at a high rate of speed collided first with another car, and then with the Sarkas' car. The driver, Sheldon Levinson, later claimed that a vehicle pulled in front of him, and that he attempted to stop his motor home when he struck the cars. The accident killed both Robert and Susan Sarka and left Julie seriously injured.
 {¶ 5} In June 2002, Julie Sarka, as executrix for the Estate of Robert Sarka (referred to collectively as "Sarka") filed a complaint seeking damages against Lawrence Love, Esq. as administrator of the estate of Sheldon Levinson and several insurance companies, including Time Warner's umbrella policy carrier, AIU. In March 2003, Sarka amended the complaint and sought declaratory relief for Uninsured/Underinsured Motorist ("UM/UIM") coverage and monetary damages. The parties filed cross-motions for summary judgment to resolve the issue on UM/UIM coverage. In September 2003, the trial court granted AIU's motion for summary judgment, finding that there was no UIM coverage. Julie Sarka appealed, and this Court reversed the grant of summary judgment, finding that "Sarka was entitled to coverage by operation of law based on AIU's failure to offer UM coverage under the policy." Sarka v. Love, Cuyahoga App. No. 83446, 2004-Ohio-1911.
 {¶ 6} The case proceeded to trial in December 2004, and a jury awarded $4,758,022.88 to Sarka against AIU. Sarka immediately moved for prejudgment interest. AIU moved for a new trial, enforcement of setoff or in the alternative for remittitur, and all three motions were denied by the court. Sarka then filed a notice of deposition and request for production of documents in connection with their claim for prejudgment interest. AIU moved for a protective order and claimed that the materials requested were subject to work product immunity and were privileged.
 {¶ 7} The trial court denied the motion for a protective order, finding that any documents which AIU claimed as privileged should be submitted to the court for an in camera inspection. AIU now appeals from these collective orders in the assignments of error set forth in the appendix of this opinion.
I. Entitlement to a Setoff
 {¶ 8} In its first assignment of error, AIU contends that its policy is properly classified as excess insurance coverage over the $2 million Primary Business Automobile Liability Insurance policy maintained by Time Warner with Travelers Insurance Company. It claims that under the clear and unambiguous terms of the AIU policy, any UIM coverage available to the Sarkas would attach only above the $2 million in underlying primary commercial auto insurance, and that only claims that would be insured under its own policy would serve to exhaust or reduce the $2 million in primary coverage.
 {¶ 9} AIU therefore asserts that the $1,244,000 in monies paid to Julie and Susan Sarka were not claims that would have been insured under the AIU policy because under Westfield Ins. Co. v. Galatis,100 Ohio St.3d 216, 2003-Ohio-5849, relatives are not qualified as "insureds."
 {¶ 10} The record reveals that AIU issued a "Commercial Umbrella Policy" of insurance in the State of New York, Policy No. BE 309 1467, effective June 1, 1995 through June 1, 2001. To support its contention that any coverage allowed by the policy was merely excess coverage, AIU relies on the following provision of the policy, which states:
"Insuring Agreements
I. Coverage
We will pay on behalf of the Insured those sums in excess of the Retained Limit that the insured becomes legally obligated to pay by reason of liability imposed by law or assumed by the Insured under an Insured contract because of Bodily Injury, Property Damage, Personal Injury or Advertising Injury that takes place during the policy period and is caused by an occurrence happening anywhere in the world. * * *."
 {¶ 11} The estate contends that AIU is not entitled to set off UIM benefits paid by other insurance companies unless the clear, unambiguous terms of their own policy allow for such a setoff. The estate further asserts that the policy language does not contain such terms.
 {¶ 12} The parties' main point of contention rests on the determination of whether the AIU policy is in fact an umbrella policy which would provide "drop down" coverage, or whether the policy is merely an excess policy which would not provide drop down coverage. In Wrightv. Medamerican International, Montgomery App. No. 19809, 2003-Ohio-5723
the court recognized:
"Ohio law distinguishes between `umbrella' policies and `excess' liability policies. (Footnote omitted.) `Umbrella policies are different from standard excess insurance policies in that they are meant to fill gaps in coverage both vertically, by providing excess coverage, and horizontally (by providing primary coverage).' [Citations omitted.] `The vertical coverage provides additional coverage above the limits of the insured's underlying primary insurance, whereas the horizontal coverage is said to `drop down' to provide primary coverage for situations where the underlying insurance provides no coverage at all.'" Pillo v.Stricklin, Stark App. No. 2000-CA-201, 2002 Ohio 363. Other Ohio courts also have recognized that umbrella policies provide both vertical coverage when an underlying policy has been exhausted and horizontal coverage to fill gaps in the coverage provided by an underlying policy, whereas excess policies merely provide vertical coverage. See, e.g.,McNeeley v. Pacific Employers Ins. Co., Franklin App. No. 02AP-1217, 2003 Ohio 2951; Cincinnati Ins. Co. v. Lang, Lake App. No. 2002-L-063, 2003 Ohio 3267; Ponser v. St. Paul Fire Marine Ins. Co., Licking App. No. 2002CA00072, 2003 Ohio 4377; American Special Risk Ins. Co. v. A-BestProducts, Inc. (N.D. Ohio 1997), 975 F. Supp. 1019, 1022. Likewise, courts in other jurisdictions also recognize the foregoing distinction between umbrella policies and excess policies as a general principle of insurance law. See, e.g., Commercial Union Ins. Co. v. Walbrook Ins.Co., Ltd. (1st Cir. 1994), 41 F.3d 764, 767 n. 4."
 {¶ 13} While AIU contends that the AIU policy is clear and unambiguous that the policy merely provides excess coverage, Section III of the policy appears to imply otherwise. This provision states:
"III. Limits of Insurance
* * *
D. Subject to B. and C. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of damages covered under Insuring Agreement I because of all Bodily Injury, Property Damage, Personal Injury and Advertising Injury arising out of any one Occurrence.
If the applicable limits of insurance of the policies listed in the Schedule of Underlying Insurance or of other insurance providing coverage to the Insured are reduced or exhausted by payment of one or more claims that would be insured by our policy, we will:
1. In the event of a reduction, pay in excess of the reduced underlying limits of insurance; or
2. In the event of exhaustion of the underlying limits of insurance, continue in force as underlying insurance."
 {¶ 14} This language implies that exhaustion of the underlying insurance — offered in this case through Traveler's Insurance — is not a condition precedent to providing coverage. The "if" language contained in III (D) provides a scenario in which payment would be made, not an absolute certainty of all payment possibilities. Had the policy been intended solely as an excess policy, the language contained in AIU's own policy would have explicitly stated any conditions precedent to coverage. Since the language is not clear and unambiguous that this provision applies only to excess coverage, any ambiguities in insurance contracts are generally construed against the drafter of the provision, or in this case, against AIU. See King v. Nationwide Ins. Co. (1988),35 Ohio St.3d 208, syllabus.
 {¶ 15} We find that the policy issued by AIU was in fact an umbrella policy and therefore subject to "drop down" coverage. AIU's first assignment of error lacks merit.
II. Motion for a New Trial
 {¶ 16} In its second assignment of error, AIU claims that the trial court erred in failing to grant its motion for a new trial. It claims that Sarka's counsel made repeated improper statements and introduced irrelevant evidence throughout the course of the trial.
 {¶ 17} Civ.R. 59 allows a trial court to grant a new trial upon the motion of either party. Under Civ.R. 59(A), a new trial may be granted to all or any of the parties and on all or part of the issues upon the following grounds: (1) irregularity or abuse of discretion such that a fair trial was prevented; (2) misconduct on the part of the jury or the prevailing party; (3) accident or surprise that the wronged party could not have guarded against; (4) excessive or inadequate damages resulting from the influence of passion or prejudice; (5) disproportion in the amount of the recovery; (6) the judgment is against the manifest weight of the evidence; (7) the judgment is contrary to law; (8) there exists newly discovered evidence that the party could not have discovered and produced using reasonable diligence; or, (9) an error of law brought to the attention of the trial court.
 {¶ 18} We review a trial court's ruling on a motion for a new trial for an abuse of discretion. Brooks v. Wilson (1994), 98 Ohio App.3d 301,304. "Abuse of discretion" in relation to the disposition of a motion for a new trial, implies an unreasonable, arbitrary, or unconscionable attitude upon the part of the court. Poske v. Mergl (1959),169 Ohio St. 70, 75. When determining whether the trial court has abused its discretion, an appellate court may not substitute its judgment for that of the trial court. Pons v. Ohio State Med. Bd., 66 Ohio St.3d 619,621, 1993-Ohio-122.
 {¶ 19} AIU outlines only two specific portions of the transcript, citing first:
"Question: Did the person who caused the accident ever apologize to you?
Mr. McCrystal: Objection.
The Court: Sustained." (Tr. at 323).
 {¶ 20} AIU also objects to what it classifies as counsel's repeated referrals to AIU's status as an insurance company. It cites:
"Mr. Behrens: . . . [a]nd the fact that they didn't bring one of their one hundred thousand annuitists that they have got in New York, to come in here and argue those numbers, should tell you something.
Mr. McCrystal: Objection, your Honor.
The Court: Sustained.
Mr. Behrens: Ladies and gentlemen, the second thing I want to make clear, my clients are not coming here, asking for sympathy from these people. We don't want their pity, we don't want their sympathy. What we want is justice for what Bob Sarka's family has gone through. That's the risk they insured. That's the risk they collected all that money for over the years.
Mr. McCrystal: Objection.
The Court: Sustained." (Tr. at 402).
 {¶ 21} The trial court instructed the jury that:
"You must consider and decide this case as a dispute between persons of equal standing in the community, of equal worth and holding the same or similar stations in life. A corporation is entitled to the same fair trial as a private individual. All persons, including corporations, and other organizations, stand equal before the law, and are to be treated as equals." (Tr. at 4124-13.)
 {¶ 22} AIU acknowledges in its brief that several "statements resulted in numerous objections by counsel for AIU, almost all of which were sustained." (Appellant AIU's brief at 18). Further, we assume that a jury follows a trial court's instruction. See State v. Wogenstahl,75 Ohio St.3d 344, 1996-Ohio-219. Therefore, based on the fact that the majority of objections made by AIU were in fact sustained, and that the court gave clear and curative instructions to the jury, we cannot say that any referral to AIU's status so prejudiced the jury as to necessitate a new trial.
 {¶ 23} Although not directly quoted, AIU also refers to additional prejudice resulting from Sarka's referral both to Julie Sarka's injuries and to Susan Sarka's death. AIU additionally contends that Sarka's counsel attempted to "demonize" Sheldon Levinson and that counsel's questioning regarding an apology was inappropriate and prejudicial. We find that these contentions lack merit.
 {¶ 24} Prior to trial, the court denied AIU's motion regarding any mention of Susan's death during trial. Although the motion was denied, Sarka's counsel was clear to state to the jury that, "[a]ny claim concerning Julie's injuries or her daughter's death are not part of this case. The case is being brought against [Robert Sarka's] employer's insurance company since he was in the course and scope of his employment at the time." (Tr. at 212.) Further, and to cure even the implication of error, the trial court gave the jury a precautionary instruction which stated that the claims of both Susan's estate and Julie Sarka's claims were resolved and therefore not a part of the case against AIU. (Tr. at 412-413.)
 {¶ 25} While Julie's injuries and Susan's death along with Levinson's contribution to their deaths are inextricably linked to the lawsuit itself, this court finds no resulting prejudice from the mention of these facts during trial, particularly in light of the trial court's curative instruction.
 {¶ 26} Finally, the jury awarded the Sarkas in excess of $4 million, an amount that AIU contends should be set aside due to its excessive nature.
 {¶ 27} We review a trial court's decision to deny remittitur under an abuse of discretion standard. See Betz v. Timken Mercy Med. Ctr. (1994),96 Ohio App.3d 211, 218. "The assessment of damages is a matter within the province of the jury." Carter v. Simpson (1984),16 Ohio App.3d 420, 423. It is not proper for the reviewing court to substitute its opinion for that of the jury. Litchfield v. Morris
(1985), 25 Ohio App.3d 42, 44. The denial of a motion for remittitur is not erroneous unless the award is so excessive as to appear to be the result of passion or prejudice on the part of the jury, or unless the amount awarded is excessive and against the manifest weight of the evidence. Id. To reverse the jury's damage award, it must appear to be "so disproportionate as to shock reasonable sensibilities." Jeanne v.Hawkes Hosp. of Mt. Carmel (1991), 74 Ohio App.3d 246, 258.
 {¶ 28} AIU claims that the jury was influenced by the sympathetic nature of the plaintiff and the fact that AIU was an insurance company. In making its award, the jury was aware of the fact that Robert Sarka was forty-eight years old at the time of his death, that he had worked for several years for Time Warner and that he was killed while acting in the course and scope of his employment. While impossible to conceal the nature of AIU's business as an insurance company or the facts involved in Robert Sarka's death, in assessing damages, the jury was specifically instructed to set aside any sympathy and to decide the case solely on the evidence produced at trial and the trial court's instructions.
 {¶ 29} AIU has failed to prove how any remarks made during trial were so prejudicial as to mandate a new trial, or how the jury's award was excessive in light of the facts presented at trial.
 {¶ 30} AIU's second assignment of error lacks merit.
III. Work Product Immunity
 {¶ 31} The record indicates that after trial, Sarka sent discovery to AIU seeking portions of its claims file and other information that they claimed was relevant to a prejudgment interest evidentiary hearing as required by R.C. 1343.03(C). AIU refused to submit the discovery and, instead, moved for a protective order claiming that the discovery was privileged and that any information regarding its refusal to settle is irrelevant.
 {¶ 32} The trial court denied the motion and instructed AIU to disclose the requested documents for an in camera review. AIU appealed from this order and now contends that although Sarka is entitled to prejudgment interest, the sole issue left to decide is the date from which interest begins to run, a date which can be chosen without the requested discovery documents. It claims that the trial court's order is in essence awarding prejudgment interest twice, punishing AIU further.
 {¶ 33} This Court reviews an order granting or denying a motion for a protective order for an abuse of discretion, and such order will not be reversed absent an abuse of that discretion. Ruwe v. Bd. of SpringfieldTwp. Trustees (1987), 29 Ohio St.3d 59, 61; Cargotec, Inc. v. WestchesterFire Ins. Co., 155 Ohio App.3d 653, 2003-Ohio-7257. We agree with AIU that prejudgment interest does not punish the party responsible for the underlying damages but, rather, it acts as compensation and serves ultimately to make the aggrieved party whole. Westbrock v. Western OhioHealth Care (2000), 137 Ohio App.3d 304, 324. There is no indication, however, that AIU is being "punished" twice.
 {¶ 34} R.C. 1343.03(C) states:
"(C) (1) If, upon motion of any party to a civil action that is based on tortious conduct, that has not been settled by agreement of the parties, and in which the court has rendered a judgment, decree, or order for the payment of money, the court determines at a hearing held subsequent to the verdict or decision in the action that the party required to pay the money failed to make a good faith effort to settle the case and that the party to whom the money is to be paid did not fail to make a good faith effort to settle the case, interest on the judgment, decree, or order shall be computed as follows: * * *
(b) In an action in which the party required to pay the money engaged in the conduct resulting in liability with the deliberate purpose of causing harm to the party to whom the money is to be paid, from the date the cause of action accrued to the date on which the order, judgment, or decree was rendered; (c) In all other actions, for the longer of the following periods: (i) From the date on which the party to whom the money is to be paid gave the first notice described in division (C)(1)(c)(i) of this section to the date on which the judgment, order, or decree was rendered. The period described in division (C)(1)(c)(i) of this section shall apply only if the party to whom the money is to be paid made a reasonable attempt to determine if the party required to pay had insurance coverage for liability for the tortious conduct and gave to the party required to pay and to any identified insurer, as nearly simultaneously as practicable, written notice in person or by certified mail that the cause of action had accrued. (ii) From the date on which the party to whom the money is to be paid filed the pleading on which the judgment, decree, or order was based to the date on which the judgment, decree, or order was rendered."
 {¶ 35} The hearing provision of R.C. 1343.03(C) refers to interest "on a judgment, decree, or order for the payment of money rendered in a civil action based on tortious conduct." Although AIU claims that the production of its claims file is a privileged disclosure under the work product immunity exception, the Ohio Supreme Court has held otherwise.
 {¶ 36} In Moskovitz v. Mt. Sinai Med. Ctr. (1994), 69 Ohio St.3d 638,662-663, the court held,
"[I]n a R.C. 1343.03(C) proceeding for prejudgment interest, neither the attorney-client privilege nor the so-called work product exception precludes discovery of an insurer's claims file. The only privileged matters contained in the file are those that go directly to the theory of defense of the underlying case in which the decision or verdict has been rendered. Additionally, on occasion, this rule might also apply to the file of a party's attorney."
 {¶ 37} The Moskovitz court relied upon its earlier decision in Peykov. Frederick (1986) 25 Ohio St.3d 164, supra, paragraphs one and two of the syllabus, wherein the Court held that:
"1. When a plaintiff, having obtained a judgment against a defendant, files a motion for prejudgment interest on the amount of [ 635 N.E.2d at 348-49] that judgment pursuant to R.C. 1343.03(C), the plaintiff, upon a showing of `good cause' pursuant to Civ.R. 26(B)(3), may have access through discovery to those portions of the defendant's insurer's `claims file' that are not shown by the defense to be privileged attorney-client communications.
"2. If the defense asserts the attorney-client privilege with regard to the contents of the `claims file,' the trial court shall determine by in camera inspection which portions of the file, if any, are so privileged. The plaintiff then shall be granted access to the non-privileged portions of the file."
 {¶ 38} The Moskovitz court found, and this court held in
Radovanic v. Cossler (2000), 140 Ohio App.3d 208, 214, that: "Peyko establishes that any determination regarding a party's good faith effort to settle requires a review of the settlement efforts made by a party's insurance carrier(s). 25 Ohio St. 3d at 166-167, 25 Ohio B. Rep. at 209, 495 N.E.2d at 921. Most of the information regarding the insurer's efforts will be contained in the claims file. In this regard, Peyko clearly recognizes that a post-trial proceeding for prejudgment interest is amenable to the general discovery process established by the Civil Rules. * * *"
 {¶ 39} We therefore find that the trial court did not err in denying AIU's motion for a protective order, and further find that any potential disclosure of so-called privileged documents will be protected by the court's in camera review.
 {¶ 40} We therefore affirm the decision of the trial court and return this case to the trial court to proceed with the in camera inspection of the requested documents, followed by a hearing to determine prejudgment interest.
It is ordered that appellee shall recover of appellant costs herein taxed.
The court finds that there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Celebrezze, JR., P.J., and Cooney, j., concur
 APPENDIX A ASSIGNMENTS OF ERROR
 "I. THE TRIAL COURT ERRED IN DENYING AIU INSURANCE COMPANY'S MOTION TOENFORCE SET-OFF AND FOR A REDUCTION IN JUDGMENT.
 II. THE TRIAL COURT ERRED IN DENYING AIU INSURANCE COMPANY'S MOTION FORA NEW TRIAL.
 III. THE TRIAL COURT ERRED IN DENYING AIU'S MOTION FOR PROTECTIVEORDER, AND IN ORDERING PRODUCTION OF MATERIALS SUBJECT TO WORK PRODUCTIMMUNITY."