[Cite as *Cruz v. English Nanny & Governess School*, 2020-Ohio-4216.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

CHRISTINA CRUZ, ET AL.,                  :

      Plaintiffs-Appellees,          :

                                 No. 108767

      v.                             :

ENGLISH NANNY & GOVERNESS          :
SCHOOL, ET AL.,

                             :

      Defendants-Appellants.

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:**  AFFIRMED IN PART, REVERSED IN PART,
                AND REMANDED
**RELEASED AND JOURNALIZED:**  August 27, 2020

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-11-768767

---

### *Appearances:*

The Pattakos Law Firm, L.L.C., Peter Pattakos, and Rachel
Hazelet, *for appellees* Christina Cruz and Heidi Kaiser.

Mark A. Novak, *for appellants* English Nanny &
Governess School, L.L.C., English Nanny & Governess
Placement Agency, L.L.C., Sheilagh Roth, and Bradford
Gaylord.

EILEEN T. GALLAGHER, A.J.:

{¶ 1} Defendants-appellants, English Nanny & Governess School, L.L.C.

("the School"), English Nanny & Governess Placement Agency, L.L.C. ("the

Placement Agency"), Sheilagh Roth, and Bradford Gaylord (collectively "defendants" or "English Nanny"), appeal a judgment of the Cuyahoga County Common Pleas Court, rendered following remand from this court, that (1) reinstated compensatory damages that had previously been remitted, and (2) increased the amount of attorney fees payable to counsel for plaintiffs-appellees, Christina Cruz and Heidi Kaiser (collectively "plaintiffs"). Defendants claim the following four errors:

> 1. The trial court's June 7, 2019 reversal of its prior remittitur of plaintiff-appellee Cruz's economic damages constitutes an abuse of discretion because it exceeded the scope of this court's June 8, 2017 mandate, which was merely to apply the Supreme Court of Ohio's four-part test for remittitur to previously adjudicated facts of this case. Moreover, the court disregarded several important factual findings it had previously made regarding the spurious nature of Cruz's claims for economic damages.

> 2. The trial court abused its discretion in reinstating seven-eighths (7/8) of plaintiff-appellees' lodestar fee because it substantially disregards counsel's forty (40) percent contingency fee contract with plaintiff-appellees and contradicts the well-grounded legal and factual conclusions of [the first trial judge's] August 28 and September 29, 2015 attorney fee rulings, which were reached after a full hearing on the merits of plaintiffs-appellees' attorney fee request.

> 3. The trial court abused its discretion in awarding the Chandra Law Firm $123,192.70 for work performed during the trial of this matter because the record clearly indicates that [Attorney] Pattakos performed the majority of the work at trial as lead counsel and that the Chandra Law Firm was merely substituting for previous co-counsel, whom the court determined did not materially contribute to plaintiff-appellees' success at trial.

> 4. The trial court abused its discretion in awarding Attorney Peter Pattakos and the Chandra Law Firm fees for post-verdict and appellate work performed because current Ohio law does not provide for the recovery of those fees; the trial court awarded fees based solely

on plaintiff-appellees' self-serving briefs and exhibits regarding such fees, and plaintiff-appellee failed to establish the reasonableness of the fees under either prong of the Ohio Supreme Court's *Bittner* test for attorney's fees.

{¶ 2} We find some merit to the appeal, affirm the trial court's judgment in part, reverse it in part, and remand the case to the trial court (1) to recalculate Pattakos's attorney fees without the inclusion of appellate fees, and (2) to reconsider its award of attorney fees to the Chandra Law Firm and explain how any fees awarded to the Chandra Law Firm were necessary and reasonable to the plaintiffs' success at trial.

## I.  Facts and Procedural History

{¶ 3} The English Nanny defendants educate and find employment for professional nannies and governesses.  Cruz was one of the School's graduates, and Kaiser was an employee of the Placement Agency responsible for placing graduates with clients seeking the services of professional nannies or governesses.  Defendants terminated their relationships with plaintiffs after Cruz accused one of the defendants' wealthy clients of sexual abuse, and Kaiser refused to place another nanny with the client.  Plaintiffs filed a complaint against defendants, alleging claims of wrongful termination against public policy, defamation, negligent and intentional infliction of emotional distress, and breach of contract.  Defendants denied the claims and filed a counterclaim for breach of contract against Cruz.

{¶ 4} At the conclusion of a 26-day trial before a visiting judge, a jury found in favor of Cruz on her breach of contract and intentional infliction of emotional

distress claims. The jury awarded Cruz $150,000 in compensatory damages ($75,000 in economic damages and $75,000 in noneconomic damages) against defendants on her intentional infliction of emotional distress claim and $10 in compensatory damages on her breach of contract claim against the Placement Agency. The jury awarded Cruz punitive damages against the Placement Agency in the amount of $50,000, Roth in the amount of $68,750, and Gaylord in the amount of $50,000. The jury also found the defendants liable for Cruz's reasonable attorney fees and expenses.

{¶ 5} The jury similarly found in favor of Kaiser and against the School and Placement Agency on her wrongful discharge in violation of public policy claim, and awarded her $20,000 in compensatory damages. The jury awarded Kaiser punitive damages against the School and Placement Agency in the amount of $54,000, plus reasonable attorney fees and expenses.

{¶ 6} Finally, the jury found in favor of the School and against Cruz on its counterclaim for breach of contract and awarded the school $8,262.24 in compensatory damages.

{¶ 7} The parties filed several posttrial motions, including motions for judgment notwithstanding the verdict ("JNOV"), new trial, remittitur, and to cap the punitive damages award. The visiting judge denied the motion for JNOV challenging the verdicts in favor of Cruz and Kaiser, but granted defendants' motion for remittitur and reduced the amount of Cruz's economic damages from $75,000 to zero. The court also applied statutory punitive damages caps to the punitive

damages awards and reduced them accordingly. Cruz's award of punitive damages against the School was reduced to zero, and her punitive damages award against Gaylord was reduced to $28,528. (Aug. 20, 2015 judgment entry at p. 14.) Kaiser's punitive damages award against the Placement Agency was reduced to zero and her punitive damages award against the School was reduced to $10,311. Following a hearing on attorney fees, the court awarded plaintiffs $125,504.45 in fees and expenses.

{¶ 8} In deciding to remit the full amount of Cruz's economic damages, the trial court concluded that Cruz had "offered no evidence of her earnings prior to the tortious conduct of defendants and no documentary evidence of her earnings since the tort." (Aug. 20, 2015 judgment entry at 3.) The court also concluded that there was "no evidence that Ms. Cruz's earning capacity was diminished by her serious emotional distress, nor [wa]s there evidence—if there was diminution of the value— of the dollar amount of lost earning capacity." (Aug. 20, 2015 judgment entry at 3.) Therefore, the trial court concluded that economic damages resulting from Cruz's emotional distress was "entirely speculative." (Aug. 20, 2015 judgment entry at 3.)

{¶ 9} With respect to attorney fees, the court observed that counsel represented plaintiffs under a 40 percent contingency agreement. After granting the defendants' motion for remittitur and reducing the punitive damages awards, the net amount of plaintiffs' damages award was $194,066.76. The court multiplied that amount by the forty percent rate provided in the contingency fee agreement and reached a product of $77,626.70. The court added $17,782.27, which represented

plaintiffs' litigation expenses, to the $77,626.70 and awarded a total amount of attorney fees and expenses in the amount of $95,308.97. (Aug. 28, 2015 judgment entry at 2.)

{¶ 10} Although the court awarded attorney fees pursuant to the contingent fee agreement, the court considered the plaintiffs' request for attorney fees under the alternative "lodestar" calculation method. Under this method, the trial court first calculates the "lodestar" amount by multiplying the number of hours reasonably expended by a reasonable hourly rate. *Bittner v. Tri-County Toyota, Inc.*, 58 Ohio St.3d 143, 569 N.E.2d 464 (1991). After arriving at the lodestar figure, the trial court may modify the amount based on the eight factors listed in Prof.Cond.R. 1.5, which governs attorney fees and expenses.

{¶ 11} After considering the record, the trial court determined that plaintiffs' lead counsel, Peter G. Pattakos, who had been a lawyer for four years at the time plaintiffs retained his services, was entitled to fees for 1,000 hours of work. Based on counsel's level of experience, the court concluded that he was entitled to a reasonable hourly rate of $150 in 2011, $175 in 2012, $200 in 2013, $225 in 2014, and $250 in 2015. (Aug. 28, 2015 judgment entry at 4.) Using these figures, the lodestar figure would have been $191,000. (Aug. 28, 2015 judgment entry at 6.) However, the trial court rejected the lodestar calculation because counsel was retained under a contingency fee agreement.

{¶ 12} In its judgment entry dated August 28, 2015, the trial court concluded that counsel's recovery under the contingent fee agreement was consistent with

community practices in tort cases and that, therefore, "counsel has not lost if he is not paid on an hourly basis." The trial court further observed that the lodestar calculation is most prominently used in civil rights cases and consumer protection matters as opposed to private tort cases. The court concluded by stating, in relevant part:

> Consequently, the Court believes that the lodestar calculation and the cases in which it has been decisive are neither determinative nor particularly relevant in determining a reasonable attorney fee for defendants to reimburse in this case. Rather, the Court should be guided primarily by tort practices and contingency fee considerations, factors under Rule 1.5, and by the likely intention of the jury that the plaintiffs should be not be required to have their damages diminished by attorney fees and litigation expenses.

(Aug. 28, 2015 judgment entry at 8.)

{¶ 13} In its August 28, 2015 judgment entry, the trial court also declined to award attorney fees to co-counsel, the Chandra Law Firm, on grounds that the Chandra Law Firm was not involved in the litigation until after a mistrial occurred in April 2015, more than three years after the complaint was filed. The court acknowledged that the greater experience of lawyers at the Chandra Law Firm was helpful to lead counsel, but found no evidence to explain why the prior law firm that served as co-counsel was replaced, or why services of the Chandra Law Firm were necessary to the presentation of plaintiffs' case. (Aug. 28, 2015 judgment entry at 5.) The prior law firm was also not awarded any attorney fees.

{¶ 14} Plaintiffs filed a motion for reconsideration of the attorney fees. In a judgment entry dated September 29, 2015, the court increased plaintiffs' attorney

fees and expenses award by an additional $30,195.48 in expenses. (Sept. 29, 2015 judgment entry at 4.) This amount represented additional litigation expenses that were not included in the original award. The September 29, 2015 judgment did not change the attorney fee award of $77,622.60.

{¶ 15} Defendants appealed the jury verdict and some of the trial court's rulings on postverdict motions. Plaintiffs filed a cross-appeal of the trial court's judgment remitting Cruz's economic damages and the trial court's attorney fee award. We affirmed the jury's verdicts but found that the trial court abused its discretion in (1) granting remittitur without considering the relevant factors set forth in *Wightman v. CONRAIL*, 86 Ohio St.3d 431, 715 N.E.2d 546 (1999). *Cruz v. English Nanny & Governess School*, 2017-Ohio-4176, 92 N.E.3d 143, ¶ 125 (8th Dist.) ("*Cruz I*"). We also found that the trial court erred in basing the amount of the attorney fees solely on the contingent fee agreement without consideration of other relevant factors.[1] *Id.* We, therefore, remanded the case to the trial court (1) to reconsider the defendants' motion for remittitur in light of the test set forth in *Wightman*; and (2) to reconsider plaintiffs' motion for attorney fees in light of the factors set forth in Prof.Cond.R. 1.5(a). *Id.* at ¶ 90, 105.

{¶ 16} By the time the case was remanded to the trial court, the visiting judge who presided over the trial had retired, and the case was returned to the originally assigned judge. The originally assigned judge reinstated the jury's award of $75,000

---

[1] Though not relevant to this appeal, we also found that the trial court abused its discretion in finding that plaintiffs' counsel engaged in frivolous conduct and ordering that he pay defendants' stipulated attorney fees. *Cruz I* at ¶ 125.

in economic damages to Cruz. In reversing the prior judgment of remittitur, the court found that Cruz presented sufficient evidence to prove her damages with certainty, that the award of $75,000 was not excessive, and that the defendants failed to satisfy every element of the *Wightman* test.

{¶ 17} The trial court also reconsidered the plaintiffs' requests for attorney fees and expenses based on evidence in the record. The court first calculated a lodestar value based on the number of hours reasonably worked multiplied by a reasonable hourly rate. The court then adjusted that value based upon the reasonableness factors set forth in Prof.Cond.R. 1.5(A) and awarded a total of $463,677.08 in attorney fees and expenses, composed of $282,270.63 in attorney fees for Attorney Pattakos, $138,821.81 in attorney fees for the Chandra Law Firm, and $42,584.64 in litigation expenses. Defendants again appeal the trial court's judgment.

## II. Law and Analysis

### A. Remittitur

{¶ 18} In the first assignment of error, defendants argue the trial court abused its discretion by reversing its prior remittitur of Cruz's economic damages because the reinstatement of Cruz's economic damages exceeded the scope of this court's mandate in *Cruz I*, which simply required the trial court to apply the four-part test for remittitur set forth in *Wightman*, 86 Ohio St.3d 431, 715 N.E.2d 546. Defendants contend that because this court in *Cruz I* did not expressly overturn any

of the visiting judge's factual findings, those findings were binding on the court on remand.

{¶ 19} A motion for remittitur challenges the weight of the evidence. *Cruz I*, 2017-Ohio-4176, 92 N.E.3d 143, at ¶ 85, citing *Austin v. Chukwuani*, 8th Dist. Cuyahoga No. 104590, 2017-Ohio-106, ¶ 19. An appellate court reviews a trial court's ruling on a motion for remittitur for an abuse of discretion. *Id.* at ¶ 86, citing *Shepard v. Grand Trunk W. RR. Inc.*, 8th Dist. Cuyahoga No. 92711, 2010-Ohio-1853, ¶ 81. An abuse of discretion may be found where a trial court "'applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact.'" *Id.*, quoting *Thomas v. Cleveland*, 176 Ohio App.3d 401, 2008-Ohio-1720, 892 N.E.2d 454, ¶ 15 (8th Dist.).

{¶ 20} In *Cruz I*, we found that the trial court abused its discretion by failing to apply the correct the legal standard to a request for remittitur because it failed to apply the test articulated in *Wightman. Id.* at 87-90. However, we also could not "discern from the court's decision that it even considered the criteria." *Id.* at ¶ 88. In other words, we determined that the trial court failed to make factual findings necessary for application of the *Wightman* test. *Id.* at ¶ 87-88.

{¶ 21} Moreover, we found that "nothing in the record demonstrates that Cruz consented to remittitur in lieu of a new trial." *Id.* at ¶ 89. A plaintiff's consent to a reduction in damages in lieu of a new trial is required for remittitur under the *Wightman* test. *See Wightman* at 444. We, therefore, concluded that not only did the trial court fail to apply the correct legal standard to a request for remittitur, the

trial court's judgment also failed to make relevant factual findings from the record. *Id.* at ¶ 88. And since the trial court's factual findings were incomplete, it would have been nonsensical to require the trial court to be limited to them on remand. Therefore, the trial court was not bound by the factual findings in its August 20, 2015 judgment entry granting the motion for remittitur.

{¶ 22} Having determined that the trial court was not bound by factual findings in its prior judgment granting remittitur, we now turn to whether the trial court abused its discretion in reinstating Cruz's economic damages. Before ordering a remittitur, a trial court must find that "(1) unliquidated damages are assessed by a jury, (2) the verdict is not influenced by passion or prejudice, (3) the award is excessive, and (4) the plaintiff agrees to the reduction in damages." *Wightman*, 86 Ohio St.3d 431 at 444, 715 N.E.2d 546; *see also Harris v. Mt. Sinai Med. Ctr.*, 116 Ohio St.3d 139, 2007-Ohio-5587, 876 N.E.2d 1201, ¶ 39. "The denial of a motion for remittitur is not erroneous unless the award is so excessive as to appear to be the result of passion or prejudice on the part of the jury, or unless the amount awarded is excessive and against the manifest weight of the evidence." *Sarka v. Love*, 8th Dist. Cuyahoga No. 85960, 2005-Ohio-6362, ¶ 27. Reversing a jury's damages award is only appropriate if the award is "so disproportionate as to shock reasonable sensibilities." *Id.*, quoting *Jeanne v. Hawkes Hosp. of Mt. Carmel*, 74 Ohio App.3d 246, 598 N.E.2d 1174 (10th Dist.1991).

{¶ 23} The issue here is whether the trial court should have remitted the jury's award of $75,000 in economic damages on Cruz's intentional infliction of

emotional distress claim. Cruz alleged that she suffered emotional distress that impaired her earning capacity as a result of the defendants' conduct. "The measure of damages for impairment of earning capacity is the difference between the amount which the plaintiff was capable of earning before [her] injury and that which [s]he is capable of earning thereafter." *Hanna v. Stoll*, 112 Ohio St. 344, 353, 147 N.E. 339 (1925). Economic damages must be established by substantial evidence to allow a jury to determine the amount of damages with reasonable certainty. *Id.*; *see also Andler v. Clear Channel Broadcasting, Inc.*, 670 F.3d 717, 726 (6th Cir.2012). However, "[b]ecause predictions about future earning potential are necessarily somewhat speculative, an exact calculation of what the plaintiff could have earned but for the injury is not required[.]" *Id.* at 726, citing *Hanna*. *See also Gateway Consultants Group, Inc. v. Premier Physicians Ctrs., Inc.*, 8th Dist. Cuyahoga No. 104014, 2017-Ohio-1443, ¶ 30 (Damages may be reasonably estimated.). In *Andler*, the court explained:

> The damages are awarded for loss of earning power, not simply loss of earnings. The proper focus is thus what the injured plaintiff could have earned over the course of her working life without the injury versus what she will now earn, not what she earned or will earn in any given year. [*Hanna v. Stoll*, 112 Ohio St. 344,147 N.E. 339] (plaintiff must show that "the amount of wages [he] will be capable of earning over his working life after his injury is less than the amount of wages he was capable of earning over his working life before his injury"). Accordingly, the fact that a plaintiff earns a higher annual salary after an injury than she did prior to the injury does not bar her from recovering for loss of earning capacity. *See*, *e.g.*, *Taylor v. Freedom Arms, Inc.*, [5th Dist. Muskingum No. CT2008-0071, 2009-Ohio-6091] at *3; 2 Stein on *Personal Injury Damages* § 6.9 ("A plaintiff who, at the time of trial, is receiving higher wages than those which he or she was earning at the time of the injury, may nevertheless recover for

impairment of earning capacity."); D.E. Ytreberg, Annotation, *Sufficiency of Evidence, in Personal Injury Action, to Prove Impairment of Earning Capacity and to Warrant Instructions to Jury Thereon*, 18 A.L.R. 3d 88, §2[b] (1965 & Supp. 2011) ("[P]roof that earnings increased or remained the same between the time of injury and the time of trial does not necessarily bar a recovery for impairment of earning capacity. * * *.). In such situations, the plaintiff can still recover if she can show that she would have earned even more over the course of her working life if she had not been injured.

{¶ 24} Although Cruz was unemployed at the time of her injury, she had recently graduated from the School and was due to be placed with a family through the Placement Agency. Placement with a client-family would have increased her future earnings. Cruz testified, however, that as a result of mental distress she experienced following the defendants' conduct, she was unable to earn more than $10,000 per year in the four years following the defendants' retaliation against her despite consistent efforts to find employment. She also stated that the salary for a nanny who had graduated from the School and was placed through the Placement Agency fell within of range of $28,000 to $40,000, plus benefits. (Tr. 2245, 2208-2210.) Cruz explained that it was difficult for her to work because she suffered from anxiety and depression as a result of the defendants' conduct, which diminished her day-to-day functioning, including her capacity to function in school and at work. Therefore, there was competent, credible evidence establishing that Cruz suffered lost earning capacity during the four years between the incidents giving rise to this case and the time of trial.

{¶ 25} And, the award of $75,000 was not excessive; it represented less than $20,000 per year for four years, which is below the average salary range for a full-

time nanny. Moreover, as this court found in *Cruz I*, there is no evidence that Cruz consented to remittitur in lieu of a new trial, as required by the *Wightman* test before a trial court may grant remittitur. Therefore, the trial court properly concluded that remittitur was not warranted based on the evidence in the record.

{¶ 26} The first assignment of error is overruled.

## B. Attorney Fees

{¶ 27} In the second assignment of error, defendants argue the trial court abused its discretion by reinstating seven-eighths (7/8) of plaintiffs' lodestar amount because it disregarded the contingency fee agreement between plaintiffs and their counsel. They also contend the trial court's award of attorney fees erroneously contradicts the prior judge's "well-grounded legal and factual conclusions." (Appellants' brief at 19.) However, as was the case with the prior judge's findings regarding remittitur, the trial court on remand was not bound by the factual findings set forth in the trial court's August 28 and September 29, 2015 judgment entries.

{¶ 28} Although attorney fees are generally not awarded to the prevailing party to litigation in Ohio, they may be conferred as an element of compensatory damages with a proper award of punitive damages. *Neal-Pettit v. Lawman*, 125 Ohio St.3d 327, 2010-Ohio-1829, 928 N.E.2d 421, ¶ 16; *Galmish v. Cicchini*, 90 Ohio St.3d 22, 35, 734 N.E.2d 782 (2000).

{¶ 29} As previously stated, a trial court conducts a two-step analysis when awarding attorney fees. *Bittner,* 58 Ohio St.3d at 145, 569 N.E.2d 464. The trial

court must first multiply the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Id.* The trial court may then modify that amount by application of the reasonableness factors listed in Prof.Cond.R. 1.5(a). *Id.* (Applying the predecessor to Prof.Cond.R. 1.5(a).) Those factors include:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3) the fee customarily charged in the locality for similar legal services;
>
> (4) the amount involved and results obtained;
>
> (5) the time limitations imposed by the client or by the circumstances;
>
> (6) the nature and length of the professional relationship with the client;
>
> (7) the experience, reputation, and ability of the lawyer performing the services; [and]
>
> (8) whether the fee is fixed or contingent.

Prof.Cond.R. 1.5(a)(1) through (8). The trial court has the discretion to determine which factors to apply and in what manner the factors will affect the amount of fees awarded. *Bittner* at 146.

{¶ 30} Despite defendants' argument to the contrary, we did not affirm the prior judge's legal or factual conclusions regarding the attorney fees award in *Cruz I*, except perhaps for Pattakos's hourly rates since they were, and remain, undisputed. We found that the trial court abused its discretion by deviating from the

lodestar amount based solely on the contingency fee agreement without consideration of any of the other factors set forth in Prof.Cond.R. 1.5(a). *Cruz I*, 2017-Ohio-4176, 92 N.E.3d 143, at ¶ 105. We specifically stated that "[n]o consideration was given to the other six relevant factors as they pertained to this four-year litigation that resulted in a 26-day jury trial involving substantial evidence and testimony." *Id.* at ¶ 103. In other words, the trial court's findings were incomplete, and the trial court on remand was well within its discretion to consider other evidence in the record when analyzing the other relevant factors pursuant to this court's mandate in *Cruz I*.

{¶ 31} Defendants nevertheless argue that the trial court's June 7, 2019 post-remand order awarding attorney fees failed to consistently and logically apply the other seven factors outlined in Prof.Cond.R. 1.5. For example, defendants contend the trial court erroneously cited a jury verdict of $329,750, which defendants claim "grossly exaggerates the actual compensatory and punitive damages rendered against defendants-appellants." (Appellant's brief at 22.)

{¶ 32} Appellants do not dispute that the jury awarded $329,750 in damages; they contend the court's reference to this amount was erroneous because the prior judge reduced the jury verdict to $194,066.76. (Appellants' brief at 22.) However, the prior judge reduced the jury's verdict when it granted a remittitur, which was subsequently reinstated. Although the jury's verdict was also reduced by the statutory caps on damages, the court cited the original $329,750 verdict to demonstrate that counsel obtained a substantial award on behalf of his clients. We,

therefore, find nothing erroneous about the court's mention of the jury verdict in its discussion of attorney fees.

{¶ 33} Defendants argue the trial court erroneously stated that "Attorney Pattakos spent an estimated 1,122 hours on this case." They again contend this figure "disregards [the prior judge's] previous factual determination that Pattakos reasonably spent just 1,000 hours on the case." (Appellants' brief at 22.) However, defendants take this statement out of context. Pattakos submitted to the court that he conservatively estimated spending 1,122 hours on the case. (June 7, 2019 judgment entry at 11.) The trial court rejected the 1,122 hours and, like the prior judge, found that 1,000 hours was a reasonable estimate of Pattakos's time, after excluding time spent on issues that did not contribute to the jury's verdict. We, therefore, find nothing erroneous about the trial court's observation that Pattakos submitted a request for compensation for 1,122 hours of work.

{¶ 34} Finally, defendants argue that the trial court's June 7, 2019 judgment entry "incorrectly states that Prof.Cond.R. 1.5(a)(3), which requires courts to consider "'the fee customarily charged in the locality for similar legal services, mitigates in favor of providing the full lodestar fee in this case.'" (Appellants' brief at 22, quoting Prof.Cond.R. 1.5(a)(3).) They assert this finding is "contradicted by [the prior judge's] earlier factual conclusion that 'Mr. Pattakos's recovery under the contingency fee contract [wa]s consistent with community practices in tort cases of this sort.'" (Appellants' brief at 22, quoting August 28, 2015 judgment entry at 7.) However, the trial court on remand agreed with the prior judge that Pattakos's

contingency fee agreement was a factor weighing in favor of reducing the attorney fee award. But instead of focusing exclusively on that one factor, the court on remand considered that factor along with the seven other factors set forth in Prof.Cond.R. 1.5(a) and determined that the attorney fee award should be reduced by one-eighth of the lodestar amount since the contingency fee agreement was the only factor weighing in favor of a reduction.

{¶ 35} With respect to the other seven factors set forth in Prof.Cond.R. 1.5(a), the trial court considered the fact that the case involved over four years of pretrial litigation and culminated in a 26-day jury trial. Prior to trial, plaintiffs' counsel participated in 17 depositions and defended six summary judgment motions. Although the legal issues were not novel, the court found that the magnitude of the work involved in this employment retaliation case outweighed any reduction in fees that might have been warranted by the mundane nature of the issues. The court noted that the length and complexity of the litigation required skilled counsel, and that counsel obtained a considerable jury verdict as a result of intensive efforts. Thus, the court found that the first seven factors listed in Prof.Cond.R. 1.5(a)(1) weighed in favor of maintaining the full lodestar amount and the last factor, regarding the existence of a contingency fee agreement, weighed in favor of a reduction. The record supports all of the trial court's findings. We, therefore, find no abuse of discretion in the trial court's judgment awarding attorney fees to

Pattakos for the 1,000 hours of work he generated during the trial phase of the proceedings.[2]

{¶ 36} The second assignment of error is overruled.

### C. Co-Counsel's Attorney Fees

{¶ 37} In the third assignment of error, defendants argue the trial court abused its discretion in awarding attorney fees to the Chandra Law Firm. Defendants argue that Pattakos performed the majority of the work at trial and that the Chandra Law Firm was merely substituted for previous co-counsel, whom the prior judge determined did not materially contribute to plaintiffs' success at trial. Defendants also contend there was no evidence in the record regarding the reasonableness of the Chandra Law Firm's fees.

{¶ 38} We review a trial court's determination as to the reasonableness of attorney fees for an abuse of discretion. *Bittner*, 58 Ohio St.3d at 146, 569 N.E.2d 464. As previously stated, a trial court abuses its discretion if it '"applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact.'" *Shepard*, 8th Dist. Cuyahoga No. 92711, 2010-Ohio-1853, at ¶ 81, quoting *Thomas*, 176 Ohio App.3d 401, 2008-Ohio-1720, 892 N.E.2d 454, at ¶ 15.

{¶ 39} In order to permit meaningful appellate review of the attorney fee award, the trial court must "state the basis for the fee determination." *Bittner* at 146. "If a trial court's decision awarding attorney fees lacks sufficient explanation,

---

[2] As discussed in the fourth assignment of error, Pattakos is not entitled to recover appellate attorney fees.

an appellate court will reverse the award and remand the matter for the trial court 'to further elucidate its analysis.'" *Bales v. Forest River, Inc.*, 8th Dist. Cuyahoga No. 107896, 2019-Ohio-4160, ¶ 22, quoting *Calypso Asset Mgt., L.L.C. v. 180 Indus., L.L.C.*, 2019-Ohio-2, 127 N.E.3d 507, ¶ 29 (10th Dist.).

{¶ 40} The party seeking an award of attorney fees bears the burden of demonstrating the reasonableness of the requested fees. *Bales* at ¶ 19, citing *Nordquist v. Schwartz*, 7th Dist. Columbiana No. 11 CO 21, 2012-Ohio-4571, ¶ 22 ("The requesting party bears the burden of proving evidence of any hours worked that would be properly billed to the client, proving the attorney's hourly rate, and demonstrating that the rate is reasonable."). Thus, in determining whether the number of hours worked were reasonable for purposes of the first step of the lodestar calculation, the trial court must exclude any time the attorney "'unreasonably expended,' i.e., attorney time that is duplicative, unnecessary or excessive given the tasks performed." *Id.* at ¶ 20.

{¶ 41} There is no steadfast rule that the "reasonableness" of attorney's hours or hourly rate must be established by expert testimony. *Cleveland v. CapitalSource Bank*, 8th Dist. Cuyahoga No. 103231, 2016-Ohio-3172, ¶ 13, citing *Joseph G. Stafford & Assocs. v. Skinner*, 8th Dist. Cuyahoga No. 68597, 1996 Ohio App. LEXIS 4803, 23 (Oct. 31, 1996) (recognizing a line of cases that permits a trial court to determine reasonable attorney fees without independent expert testimony).

{¶ 42} However, the mere submission of an attorney's itemized bill is insufficient to establish the reasonableness of the amount of work billed. *Bolek v.*

*Miller-McNeal*, 8th Dist. Cuyahoga No. 103320, 2016-Ohio-1383, ¶ 12, citing *United Assn. of Journeymen & Apprentices of the Plumbing & Pipe Fitting Industry, Local Union No. 776 v. Jack's Heating, Air Conditioning & Plumbing, Inc.*, 3d Dist. Hardin No. 6-12-06, 2013-Ohio-144, ¶ 25.

{¶ 43} Attorneys sometimes present expert testimony to establish that the hours charged were reasonable given the facts of the case even though expert testimony is not required. *See, e.g., Hawkins v. Miller*, 11th Dist. Lake No. 2011-L-036, 2011-Ohio-6005, ¶ 28 (affirming award of attorney fees where expert testified to the amount of time and hourly rate charged); *Whitaker v. Kear*, 123 Ohio App.3d 413, 424-425, 704 N.E.2d 317 (4th Dist.1997) (affirming trial court's finding that evidence was sufficient to prove reasonableness of fee request where expert testified to the reasonableness of the time spent on the litigation). In other cases, attorneys present testimony from other individuals to corroborate the attorney's self-serving testimony that the fee request is reasonable. *See, e.g., Koblentz & Koblentz v. Summers*, 8th Dist. Cuyahoga No. 94806, 2011-Ohio-1064, ¶ 14 (affirming award of attorney fees where both an attorney from the plaintiff's law firm and a third-party attorney testified to the nature of the proceedings).

{¶ 44} Regardless of whether the party requesting attorney fees offers expert testimony, the party must produce evidence demonstrating that the hours expended on the case were necessary and that the rates are comparable to those in the community for similar services performed by attorneys of a similar level of skill.

*United Assn. of Journeymen & Apprentices of the Plumbing & Pipe Fitting Industry* at ¶ 20.

{¶ 45} In July 2015, the Chandra Law Firm submitted affidavits to the trial court describing the professional experience of each member of the firm, describing the hourly rates of each of the firm's attorneys, and comparing their rates to those of other attorneys in the Cleveland area who perform similar work. The affidavits also authenticated invoices documenting the hours that members of the firm spent on the trial and posttrial motions in July and August 2015. In one of the affidavits, Attorney Subodh Chandra averred that "[a]ll of the identified tasks and cost expenses were factually related to, and reasonably calculated to result in, maintain, enforce, and advance, the success that plaintiffs Ms. Cruz and Ms. Kaiser have enjoyed in this matter." However, nowhere did anyone explain how the work described in the time entries listed in the invoices was necessary and not duplicative of other work. And, Chandra, who obviously has an interest in having his own hourly rates accepted, described the hourly rates charged by other attorneys in the community without any corroborating evidence from those attorneys or anyone else.

{¶ 46} Moreover, only Attorney Pattakos testified about the hours he personally spent on the case at the hearing on the merits of the motion for attorney fees in 2015. Although plaintiffs offered the testimony of an expert witness, the expert only testified as to the reasonableness of Attorney Pattakos's fees. Attorney Pattakos also described his professional experience prior to the trials in this case and

gave detailed accounts of his work in order to establish the reasonableness of his hours and hourly rate. Because he testified at the hearing, the trial court could assess his credibility. No member of the Chandra Law Firm testified to, or explained why, the number of hours they billed were reasonable or why the work described in the invoices was necessary.

{¶ 47} The trial court's June 7, 2019 judgment entry breaks down the attorney fees into hours worked and hourly rates for several attorneys and paralegals within the Chandra Law Firm. However, the order contains no analysis regarding the reasonableness of the number of hours worked or whether the work was necessary and not duplicative of other work. The only analysis of the fees was limited to a reduction in the hourly rate of a paralegal on grounds that she billed twice the amount billed by co-counsel's previous paralegal.

{¶ 48} Although Attorney Chandra testified, by way of affidavit in 2015, that all of the work itemized in the invoices was "reasonably calculated to result in * * * plaintiffs' * * * success," his self-serving affidavit is not sufficient to establish that the hours worked on the case were necessary and not duplicative of other work. Indeed, there are questionable entries in the submitted invoice. For example, there is no explanation as to the need for billing $1,400 for drafting a postverdict motion to pierce the corporate veil, which was denied by the court. The motion obviously did not contribute to plaintiffs' success since it was denied. Counsel also billed $630 on February 2, 2016, for 2.10 hours of "responding to Plain Dealer inquiry on sanctions ruling, review press and comments. Communicate with potential amici

* * * ." There is no explanation as to how this entry, and others like it, was related to plaintiffs' success in the trial court.

{¶ 49} The trial court failed to explain how or why the hours billed by the Chandra Law Firm were necessary and reasonable. The trial court's judgment merely recites the number of hours each attorney expended on the case, multiplies that number by the hourly rates submitted by counsel, and baldly concludes that "[t]he hourly rates for the attorneys and law clerks at the Chandra Law Firm [were] reasonable in light of the evidence presented." (June 7, 2019 judgment entry at 7.) Therefore, trial court's June 7, 2019 judgment entry lacks sufficient explanation as to why the hours billed by members of the Chandra Law Firm were necessary and reasonable.

{¶ 50} The third assignment of error is sustained.

### D. Fees for Postverdict Work

{¶ 51} In the fourth assignment of error, defendants argue the trial court abused its discretion in awarding plaintiffs' counsel's posttrial request for attorney fees.

{¶ 52} In general, a trial court lacks jurisdiction to award attorney fees expended on appeal while defending a judgment. *Jay v. Massachusetts Cas. Ins. Co.*, 5th Dist. Stark No. 2009CA00056, 2009-Ohio-4519, ¶ 13. However, the Ohio Supreme Court has carved out an exception to this general rule and held that an aggrieved party may recover appellate attorney fees when his cause of action

involves certain remedial statutes.  *Klein v. Moutz*, 118 Ohio St.3d 256, 2008-Ohio-2329, 888 N.E.2d 404, ¶ 16-17.

{¶ 53} In *Klein*, plaintiffs-tenants sued their defendant-landlord under R.C. 5321.16(C), the Landlord-Tenant Act, alleging that he failed to timely return their security deposit.  The trial court awarded the tenants damages under the statute, but denied their request for attorney fees.  *Id.* at ¶ 4.  The appellate court reversed the trial court's judgment denying attorney fees and remanded the case to the trial court to make a reasonable award of attorney fees.  On remand, the trial court awarded the tenants' trial-level attorney fees, but denied their request for appellate attorney fees.  *Id.*

{¶ 54} On appeal, the Ohio Supreme Court reversed the judgment denying an award of appellate attorney fees.  *Id.* at ¶ 13.  The court explained that an aggrieved tenant could recover appellate attorney fees while seeking the return of a wrongfully withheld deposit because an important objective of R.C. 5321.16 is to ensure that an aggrieved tenant bears no expense in the recovery of a wrongfully withheld deposit.  *Id.*  The court acknowledged that other appellate courts have had allowed awards of appellate attorney fees under "other remedial statutes" such as the Consumer Sales Practices Act, Ohio's Lemon Law, and civil rights actions brought pursuant to 42 U.S.C. 1983.  *Id.* at ¶ 15.

{¶ 55} Since *Klein*, courts have declined to award appellate attorney fees in cases that did not involve remedial statutes.  For example, in *Jay,* 5th Dist. Stark No. 2009CA00056, 2009-Ohio-4519, the Fifth District declined to award appellate

attorney fees even though a jury awarded punitive damages on a bad faith insurance claim because the plaintiff's claim was not based on a remedial statute. *Id.* at ¶ 11. The court in *Jay* explained:

> A thorough reading of *Klein* reveals that the Supreme Court's decision to permit a trial court to determine appellate fees was meant to be read in harmony with *statutory provisions* that permit such an award; it was not meant to be liberally construed so as to apply to any determination of appellate fees and costs, as Jay argues, nor was it intended to create a new road of jurisdiction back to the trial court where one had not previously existed for appellants acting under a common law cause of action. Specifically, the *Klein* Court stressed that permitting a trial court to award attorney fees for causes of action brought under a remedial statute "furthers an important objective of the statute," that is, ensuring that a prevailing party need not incur the expense defending the judgment on appeal. *Klein* at ¶ 17. Furthermore, the Court based its conclusion in part on the absence of anything in the Landlord-Tenant Act "limit[ing] assessment of costs * * * to a trial court." *Id.* at ¶ 16. Thus, the Court expressly relied on the terms of the statute in making its decision. The Court reiterated that its decision was rooted in the statute when it expressed the need to act consistently with other appellate decisions "authorizing trial courts to assess attorney fees incurred on appeal to a prevailing plaintiff under other remedial statutes."

(Emphasis added.) *Id.* at ¶ 15.

{¶ 56} The Fifth District went on to recognize that portions of the analysis in *Klein* discussing the "cost savings" and "judicial efficiencies" that are achieved by allowing trial courts to award appellate attorney fees could extend beyond remedial statutes and apply to common law causes of action. *Id.* at ¶ 13. The Fifth District nevertheless declined to extend *Klein*'s holding beyond the assessment of fees generated during litigation involving remedial statutes. *Id.*, citing *Brown v. Guarantee Title & Trust/ARTA*, 5th Dist. Fairfield No. 98CA10, 1998 Ohio App.

LEXIS 5108, 7 (Oct. 13, 1998) (concluding that an insured was not entitled to appellate attorney fees incurred on appeal to defend her judgment against an insurer and observing that such an award would mean "the end to this litigation [would be] nowhere in sight.").

{¶ 57} The Ninth District also declined to extend the holding in *Klein* beyond the realm of remedial statutes. *See Lafarciola v. Elbert*, 9th Dist. Lorain No. 08CA009471, 2009-Ohio-4615. In *Lafarciola*, plaintiff-property owners sued a builder and other defendants for damages resulting from construction and excavation on an adjoining parcel of land. The jury awarded compensatory, punitive, and statutory damages pursuant to R.C. 901.51. The jury also awarded attorney fees in conjunction with the punitive damages. The builder appealed, but eventually paid the judgment and the appeal was dismissed. The owners filed a supplemental request for attorney fees to cover expense of fees incurred for the appeal. The trial court denied the request for appellate attorney fees, and the owner appealed. In affirming the trial court's denial of appellate attorney fees, the Ninth District observed that the "American rule" generally prohibits the prevailing party from recovering attorney fees in the absence of statutory authorization. *Id.* at ¶ 14, citing *Sorin v. Bd. of Edn. of Warrensville Hts. School Dist.*, 46 Ohio St.2d 177, 179, 347 N.E.2d 527 (1976). And, in accordance with the Fifth District's decision in *Jay*, the Ninth District explained:

> While Ohio courts have traditionally recognized an exception that allows an aggrieved party to recover attorney fees for work performed at the trial court level pursuant to an award of punitive damages, this

Court declines to extend that exception to allow a prevailing party to recover attorney fees for work performed at the appellate level. As the Supreme Court of Ohio acknowledged in *Sorin*, a move away from a deeply rooted policy regarding the awarding of attorney fees is best left as a matter of legislative concern.

*Id.* at ¶ 14, citing *Sorin* at 179-180.

{¶ 58} We agree with the sound reasoning articulated in *Jay* and *Lafarciola* that Ohio law does not permit recovery of appellate attorney fees except in cases involving remedial statutes. Plaintiffs' claims were not based on any remedial statute. Plaintiffs are, therefore, not entitled to recovery of attorney fees generated in defending their judgment.

{¶ 59} The fourth assignment of error is sustained.

{¶ 60} The trial court's judgment is affirmed in part, reversed in part and remanded to the trial court to (1) deduct the appellate portion of attorney fees awarded to Pattakos, and (2) to conduct additional analysis of the fees requested by the Chandra Law Firm in order to explain how the requested attorney fees were reasonable and necessary to plaintiffs' success at trial.

It is ordered that appellee and appellant share costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN T. GALLAGHER, ADMINISTRATIVE  JUDGE

SEAN C. GALLAGHER, J., and
KATHLEEN ANN KEOUGH, J., CONCUR